346 P.2d 596

STATE of Idaho on relation of Roscoe C. RICH, Leonard K. Floan and David P. Jones, Idaho Board of Highway Directors, Plaintiff-Appellant,

v.

IDAHO POWER COMPANY, a corporation, and The Mountain States Telephone and Telegraph Company, a corporation, Defendants-Respondents.

No. 8739.

Supreme Court of Idaho.

Oct. 2, 1959.

Rehearing Denied Nov. 30, 1959.

C. H. Higer, Emmett, for amicus curiae.

Tom F. Alworth, Filer, and Ray Rigby, Rexburg, for amicus curiae, Rural Electric Co. and Project Mutual Telephone Coop. Assn. Inc.

Parry, Robertson & Daly, Twin Falls, and A. C. Inman and James E. Bruce, Boise, for respondent Idaho Power Co.

Carey H. Nixon, Boise, Luis D. Rovira and Akolt, Turnquist, Shepherd & Dick, Denver, Colo., for respondent Mountain States Telephone and Telegraph Co.

Frank L. Benson, Atty. Gen., and William Padgett, Special Asst. Atty. Gen. (Graydon W. Smith, former Atty. Gen., and Allan G. Shepard, former Special Asst. Atty. Gen., on the brief), for appellant.

SMITH, Justice.

This is a declaratory judgment action brought by appellant (plaintiff) State of Idaho on relation of its Board of Highway Directors against respondents (defendants) Idaho Power Company and The Mountain States Telephone and Telegraph Company to determine the constitutionality of certain provisions of I.C. § 40–120 as amended by Idaho Sess.Laws 1957, ch. 227, providing that utilities shall be reimbursed out of the dedicated State Highway Fund for costs of relocating their utility facilities located on any federal-aid primary or secondary system or on the inter-state system of Idaho's public highways, when determined necessary by the Idaho Board of Highway Directors (hereinafter referred to as the Board).

Appellant designated for reconstruction a portion of U. S. Highway 20–26 as reconstruction Project No. F–2351(2) located in the City of Gooding, Gooding County, for inclusion within the federal-aid primary system of highways in this State.

Each respondent is a public utility corporation, organized for profit and qualified to do business in this State. Respondent Idaho Power Company furnishes electrical energy to the public and respondent The Mountain States Telephone and Telegraph Company furnishes telephone and telegraphic communication services to the public. Both are utilities as defined by I.C. § 40–120. The utility facilities of each consist of poles, wires, cables, conduits and similar equipment, constructed, owned and maintained since prior to 1957 in and upon the right-of-way of the portion of the highway included in reconstruction.

The Board, after a hearing duly noticed and as provided by I.C. § 40–120, rendered its decision determining that the contemplated highway reconstruction required relocation of respondents' facilities, and requiring respondents to remove the facilities from the highway right-of-way located in Gooding, and to relocate them in a manner as not to interfere with the reconstruction project. Respondents demanded reimbursement of their costs of relocating the facilities which appellant refused.

Respondents having answered, the parties entered into stipulations framing the issue of the constitutionality of the questioned portions of I.C. § 40–120.

The district court, on hearing the matter, found the facts essentially as herein set forth, and concluded in favor of the validity of I.C. § 40–120 in the particulars under consideration here. The court thereupon entered its judgment adjudging the statute to be valid and constitutional, and that re-

spondents are entitled to recover out of the State Highway Fund their costs incurred in relocating their facilities. Appellant appeals from the judgment.

Appellant's assignments of error present the single issue of law, i. e., the constitutionality of that portion of I.C. § 40–120(27), which provides that appellant pay, out of the State Highway Fund, the cost of relocating the utility facilities.

The relevant portions of I.C. § 40–120, as amended by Idaho Sess.Laws 1957, ch. 227, necessary to be considered, read as follows:

"40–120. Duties and powers of the board.—The Idaho board of highway directors, subject to the right of protest hereinafter provided for, shall be vested with the functions, powers and duties relating to the administration of this act and shall have power to:

\* \* \* \* \* \*

"(27) Make reasonable regulations for the installation, construction, maintenance, repair, renewal and relocation of tracks, pipes, mains, conduits, cables, wires, towers, poles and other equipment and appliances (herein called 'facilities') of any utility, in, on, along, over, across, through or under any project on the federal-aid primary or secondary systems or on the inter-state system, including extensions thereof within urban areas. Whenever the board shall determine, after notice and opportunity for hearing, that it is necessary that any such facilities which now are, or hereafter may be, located in, on, along, over, across, through or under any such federal-aid primary or secondary system or on the inter-state system, including extensions thereof within urban areas, shall be relocated, the utility owning or operating such facilities shall relocate the same in accordance with the order of the board, and *the cost of such relocation shall be a part of the cost of the acquisition of rights-of-way, easements and other rights for and the construction, maintenance, repair, improvement and development of the public highways in the highway system included in any project* on the federal-aid primary or secondary systems or on the inter-state system, and *shall be paid by the state of Idaho out of the state highway fund.* In case of any such relocation of facilities, as aforesaid, the utility owning or operating the same, its successors or assigns, may thereafter maintain and operate such facilities, with the necessary appurtenances, in the new location or new locations.

"For the purposes of this subsection the following definitions shall be applied:

· \* \* \* \* \* \*

"(b) *Cost of relocation defined.—The term 'cost of relocation' shall include the entire amount paid by such utility properly attributable to such relocation after deducting therefrom any increase in the value of the new facility and/or any salvage value derived from the old facility.*" (Emphasis supplied.)

The issue pinpointed is, whether the emphasized portions of I.C. § 40–120 are unconstitutional and therefore invalid.

Appellant, represented by the special assistant attorneys general, contends, First, that the referred to provisions of the statute are in contravention of Idaho Const. Art. 8, § 2, which in part reads:

"The credit of the state shall not, in any manner, be given, or loaned to, or in aid of any individual, association, municipality or corporation; * * *."

and Second, that highway user funds cannot be expended for the relocation of utility facilities within the purview of Idaho Const. Art. 7, § 17, which reads:

"On and after July 1, 1941 the proceeds from the imposition of any tax on gasoline and like motor vehicle fuels sold or used to propel motor vehicles upon the highways of this state and from any tax or fee for the registration of motor vehicles, in excess of the necessary costs of collection and administration and any refund or credits authorized by law, *shall be used exclusively for the construction, repair, maintenance and traffic supervision of the public highways of this state* and the payment of the interest and principal of obligations incurred for said purposes; and *no part of such revenues shall,* by transfer of funds or otherwise, *be diverted to any other purposes whatsoever.*" (Emphasis supplied.)

The present Attorney General in his argument emphasized that he was in agreement with respondents' position, that the costs of relocation should be paid by highway users "at the gasoline pumps," contra to that of appellant.

Appellant, in support of its argument that the legislation is in violation of Idaho Const. Art. 8, § 2, (giving or loaning the credit of the state), advances the premise that if the legislature, without constitutional sanction, may change the common law rule that a utility must pay the cost of relocation of its facilities placed upon public thoroughfares, then the legislature may create, retrospectively, a property right in a utility where none existed at the time of the installation of the facilities; and if so, the legislature thereby may decrease the quantum of ownership of the public in the public thoroughfares and give away the property of the public which the state holds in trust.

Appellant's contention that respondents have not and cannot acquire any property rights within the right-of-way of a public thoroughfare requires examination of Idaho Const. Art. 11, § 13, cited by respondents, which reads:

"Telegraph and telephone companies.—Any association or corporation, or the lessees or managers thereof, organized for the purpose, or any individual, shall have the right to construct and maintain lines of telegraph or telephone within this state, and connect the same with other lines; and the legislature shall by general law of uniform operation provide reasonable regulations to give full effect to this section."

The legislature in providing "reasonable regulations", referred to in the above quoted section of the Constitution, as it relates to the construction and maintenance of telegraph and telephone lines, enacted Revised Statutes, 1887, § 2700, now I.C. § 62–701, which reads:

"Rights to use highways.—*Telegraph and telephone corporations may construct lines of telegraph or telephone along and upon any public road or highway,* along or across any of the waters or lands within this state, and may erect poles, posts, piers or abutments for supporting the insulators, wires and other necessary fixtures of

their lines *in such manner and at such points as not to incommode the public use of the road or highway, * * *."* (Emphasis supplied.)

The legislature in 1903 granted similar rights to electric power companies, Idaho Sess.Laws 1903, § 1, p. 343, amended Laws 1945, ch. 37, § 1, p. 48, now I.C. § 62–705, which reads:

"Rights of way for electric power companies and the United States of America or any agency thereof.—*Any person, company or corporation* incorporated or that may hereinafter be incorporated under the laws of this state or of any state or territory of the United States, and doing business in this state, the United States of America or any agency thereof, *for the purpose of supplying, transmitting, delivering or furnishing electric power or electric energy* by wires, cables or any other method or means, shall have and *is hereby given the right to erect, construct, maintain and operate all necessary lines upon, along and over any and all public roads, streets and highways, * * ** together with poles, piers, arms, cross-arms, wires, supports, structures and fixtures for the purposes aforesaid, or either of them, *in such manner and at such places as not to incommode the public use of the road, highway,* street or railroad, or to interrupt navigation of wa-

ter, together with the right to erect, construct, maintain and operate upon said electric power line a telephone line to be used only in connection with the said electric energy and power line, * * *." (Emphasis supplied.)

■ It is to be noted that the legislature specifically limited the use, by telegraph, telephone and electric power companies, of the public roads, streets and highways of this state "as not to incommode the public use" thereof. I.C. §§ 62–701 and 62–705. By so limiting the use by utilities of the public thoroughfares the legislature, acting under the directive of the Constitution, Art. 11, § 13, intended a permissive use only; such is implicit in the legislation. Nor does the restriction pertain to the facilities in praesenti only, i. e., as of the time when placed in and upon the public thoroughfares. Not being so limited the restriction has application in futuro. In any case where the facilities incommode the public use of any highway, the people, under the Constitution and the legislative enactment, reserve the right to require the utilities to relocate their facilities so as not to incommode such public use. Utilities place facilities thereon under such constitutional and legislative restriction with full knowledge of such limitation. It follows that the right of utilities to the use of public thoroughfares is not and cannot be regarded as a permanent property right.

■ The permissive use of public highways, which the legislature by I.C. §§ 62–701 and 62–705 accords to utilities, is in recognition of the time honored rule existing in this state, that streets and highways belong to the public and are held by the governmental bodies and political subdivisions of the state in trust for use by the public, and that only a permissive right to their use, and no permanent property right, can be gained by those using them. Keyser v. City of Boise, 30 Idaho 440, 165 P. 1121, L.R.A.1917F, 1004; Yellow Cab Taxi Service v. City of Twin Falls, 68 Idaho 145, 190 P.2d 681; Boise City v. Sinsel, 72 Idaho 329, 241 P.2d 173. This Court in Village of Lapwai v. Alligier, 78 Idaho 124, 299 P.2d 475, held this rule applicable to a water utility in the placing of its facilities in and upon the public streets of a village.

■ In the exercise of its powers and duties with respect to the state highway system including streets designated a part thereof, the Department of Highways acts as agent of the state. In discharging a mandatory duty imposed by the state, such department performs a governmental function, I.C. §§ 40–106 and 40–111; Boise Development Co. v. Boise City, 30 Idaho 675, 167 P. 1032; Youmans v. Thornton, 31 Idaho 10, 13, 168 P. 1141; within the police power reserved by this state, Sandpoint Water & Light Co. v. City of Sand-

point, 31 Idaho 498, 173 P. 972, L.R.A. 1918F, 1106; Yellow Cab Taxi Service v. City of Twin Falls, 68 Idaho 145, 190 P. 2d 681.

New Orleans Gaslight Co. v. Drainage Commission of New Orleans, 197 U.S. 453, 25 S.Ct. 471, 473, 49 L.Ed. 831, construed the nature of the right of the Gaslight Company to the use, for laying its pipelines, of the streets of New Orleans, as permissive only; and therein the Court denied to the utility the right of recovery of the costs of relocation of its facilities since the state in the exercise of its police power could require changes in location thereof when necessary for public use in the interest of the public health, welfare and safety. We quote from that decision:

"In the very terms of the grant there is a recognition that the use of the streets by the gas company was to be in such manner as to least inconvenience the city in the use thereof. Except that the privilege was conferred to use the streets in laying the pipes in some places thereunder, there was nothing in the terms of the grant to indicate the intention of the state to give up its control of the public streets,—certainly not so far as such power might be required by proper regulations to control their use for legitimate purposes connected with the public health and safety. * * *

\* \* \* \* \* \*

"* * * The police power, in so far as its exercise is essential to the health of the community, * * * cannot be contracted away. * * * The gas company did not acquire any specific location in the streets; * * * and when it located its pipes it was at the risk that they might be, at some future time, disturbed, when the state might require for a necessary public use that changes in location be made.

"* * * We think whatever right the gas company acquired was subject, in so far as the location of its pipes was concerned, to such future regulations as might be required in the interest of the public health and welfare. * * * The gas company, by its grant from the city, acquired no exclusive right to the location of its pipes in the streets, as chosen by it, under a general grant of authority to use the streets. The city made no contract that the gas company should not be disturbed in the location chosen. In the exercise of the police power of the state, for a purpose highly necessary in the promotion of the public health, it has become necessary to change the location of the pipes of the gas company so as to accommodate them to the new public work. In complying with this requirement at its own expense, none of the property of

the gas company has been taken, and the injury sustained is *damnum absque injuria.*"

In Bell Telephone Co. of Pennsylvania v. Pennsylvania Public Utility Commission, 139 Pa.Super. 529, 12 A.2d 479, 481, the question was whether the utility was entitled to the cost of relocating its facilities in a public street to make way for highway improvements. Said the Court:

"* * * a utility by erecting its facilities in a certain place in the highway with the express assent of the public authorities, does not thereby acquire a vested right perpetually to maintain such facilities in that particular location; * * *."

This case recognized the principle that the political subdivision of the state in requiring the change in location of the telephone company's facilities, was, by authority of the legislature, exercising police power in the interest of public safety. Continuing, the Court said:

"The public authorities, including the county commissioners, the city and the State Highway Department, in the exercise of a reasonable discretion, determined that it was necessary to change the location of the facilities of the telephone company. This was done in order to meet a public necessity and by virtue of the police power vested in those authorities. * * * the tele-

phone company is not entitled to compensation for the expense of moving the conduit to another location in the same street."

In Anderson v. Stuarts Draft Water Company, 1955, 197 Va. 36, 87 S.E.2d 756, 757, the Court held:

"Right of state department of highways to change the grade of secondary road to make it safer and more convenient for public travel was superior to rights of water company under pipeline easements granted by owners of underlying fee after right of way for road had been acquired * * *; and hence pipeline must be relocated at expense of water company so as not to obstruct superior right of department of highways to make proposed improvement in grade of road."

The state and its political subdivisions are without power to make a valid contract permanently alienating any part of the public streets and highways or permitting a permanent encroachment or obstruction thereon limiting the use of the public thoroughfares by the public. Boise City v. Hon, 14 Idaho 272, 94 P. 167; Boise City v. Wilkinson, 16 Idaho 150, 102 P. 148; Yellow Cab Taxi Service v. City of Twin Falls, 68 Idaho 145, 190 P.2d 681; Keyser v. City of Boise, 30 Idaho 440, 165 P. 1121, L.R.A.1917F, 1004; Boise City v. Sinsel, 72 Idaho 329, 241 P.2d 173; Village of

Lapwai v. Alligier, 78 Idaho 124, 299 P.2d 475.

No right to the use of streets and highways for private purposes can be acquired by prescription as against the state or its political subdivisions, Yellow Cab Taxi Service v. City of Twin Falls, supra.

Permissive use of a street or highway does not vest in the user a property or contractual right, Keyser v. City of Boise, supra; Boise City v. Sinsel, supra.

The power of the state and its political subdivisions to require removal of a nuisance or obstruction, which in anywise interferes with the public use of streets and highways cannot be questioned. Village of Lapwai v. Alligier, supra.

Long before the adoption of our Constitution, the people adopted the common law as the rule of decision in all cases not otherwise provided by law. Such applicability in our system of judicial interpretation remained unchanged upon adoption of our Constitution, July 3, 1890. Idaho Laws, First Session, 1864, Common Law, § 1, p. 527, now I.C. § 73–116; see also Anderson v. Whipple, 71 Idaho 112, 227 P.2d 351.

Under the common law a utility, placing its facilities along streets and highways, gains no property right and upon demand must move its facilities at its expense.

New Orleans Gaslight Co. v. Drainage Commission of New Orleans, 197 U.S. 453, 25 S.Ct. 471, 49 L.Ed. 831; Bell Telephone Co. of Pennsylvania v. Pennsylvania Public Utility Commission, 139 Pa.Super. 529, 12 A.2d 479; New Jersey Bell Tel. Co. v. Delaware River Joint Commission, 125 N.J. L. 235, 15 A.2d 221; In re Delaware River Joint Commission, 342 Pa. 119, 19 A.2d 278; Delaware River Port Authority v. Pennsylvania Public Utility Commission, 393 Pa. 639, 145 A.2d 172; Transit Commission v. Long Island R. Co., 253 N.Y. 345, 171 N.E. 565; In re Elimination of Highway Railroad Crossing, 259 App.Div. 141, 18 N.Y.S. 2d 613, affirmed In re Lehigh Valley R. Co. and Union Road, 283 N.Y. 687, 28 N.E. 2d 409; Southern California Gas Co. v. City of Los Angeles, 50 Cal.2d 713, 329 P.2d 289; Anderson v. Stuarts Draft Water Company, 197 Va. 36, 87 S.E.2d 756; Opinion of the Justices, 152 Me. 449, 132 A.2d 440; State v. Southern Bell Telephone and Telegraph Co., Tenn., 319 S.W.2d 90.

Respondents assert that the common law rule may be abrogated by statute and that the legislature abrogated it by enactment of I.C. § 40–120(27) to provide payment of the costs of relocation out of the State Highway Fund.

Respondents assert that the exercise of the police power of appellant Board of Highway Directors, under I.C. § 40–120 (27), to make reasonable regulations for

relocation of utility facilities on federal-aid highway projects, is expressly conditioned on the payment of the relocation costs out of the State Highway Fund as part of the costs of acquisition of rights of way, easements and other rights for the construction, improvement and development of the public highways; and that if the referred to provisions of I.C. § 40–120(27) are held to offend the Constitution then the Board's power to order relocations would disappear because the legislature by Idaho Sess.Laws 1957, ch. 227, in addition to § 1 amending I.C. § 40–120 to include subsection (27), enacted § 2 declaring the intention of the legislature to be that the provisions of ch. 227 shall control over and supersede conflicting provisions of existing laws and of law enacted at the 34th (1957) session of the legislature.

Respondents then assert that the common law rule requiring uncompensated relocation under the vastly expanded federal-aid highway system of today, becomes unreasonable; that therefore the real question is whether (quoting respondents) "the Idaho Constitution placed the legislature in a position which would prevent it from changing the law not only in accordance with justice and equity but also for compelling economic reasons."

In our analysis whether the legislature by enactment of I.C. § 40–120(27) effected abrogation of the common law rule, we must apply certain fundamental principles and rules of interpretation. Our starting point is the famous case of Marbury v. Madison, 1 Cranch 137, 177, 2 L.Ed. 60, quoting from Chief Justice Marshall:

"The Constitution is either a superior, paramount law, unchangeable by ordinary means, or it is on a level with ordinary legislative acts, and, like other acts, is alterable when the legislature shall please to alter it. If the former part of the alternative be true, then a legislative act contrary to the Constitution is not law; if the latter part be true, then written Constitutions are absurd attempts, on the part of the people, to limit a power in its own nature illimitable."

In response to respondents' argument that the referred to statute is enacted in accordance with equity and justice for compelling economic reasons, we adopt the reasoning of State Highway Commission v. Southern Union Gas Co., 65 N.M. 84, 332 P.2d 1007, 1016:

"Much has been said concerning the power of the legislature to reimburse the utility on the basis of equity and justice. That the legislature has the power to be equitable and just we may admit, but that power is restricted by the constitution."

Also we quote from City of Cincinnati v. Harth, 101 Ohio St. 344, 128 N.E. 263, 266, 13 A.L.R. 308:

"It is earnestly urged, in support of the legislation here under examination, that it was passed in response to public necessities which have grown up out of the emergencies of existing conditions in the country. But, as we said in State ex rel. Campbell v. Cincinnati Street Ry. Co., supra [97 Ohio St. 283, 119 N.E. 735], the office of a judge is 'jus dicere non jus dare.' The duty of the court is to uphold the Constitution, even if that act shall temporarily operate to the hindrance of some beneficial result. The people adopted this very provision [Ohio Const., Art. 8, § 6, prohibiting loaning the credit of political subdivisions of the state in aid of any joint stock company, corporation or association] for the purpose of providing for themselves a safeguard against themselves."

Flaska v. State, 51 N.M. 13, 177 P.2d 174, 177, contains the following:

"Constitutions do not change with the varying tides of public opinion and desire. The will of the people therein recorded is the same inflexible law until changed by their own deliberative action, and therefore the courts should never allow a change in public sentiment to influence them in giving a construction to a written Constitution not warranted by the intention of its founders."

And in Judd v. Board of Education, 278 N.Y. 200, 15 N.E.2d 576, 584, 118 A.L.R. 789, the rule is stated:

" 'A written constitution is not only the direct and basic expression of the sovereign will, but it is the absolute rule of action and decision for all departments and offices of government in respect to all matters covered by it, and must control as it is written until it shall be changed by the authority that established it.' * * * When that sovereign will has been clearly expressed, it is the duty of the courts rigidly to enforce it. It is not the province of the courts to circumvent it because of private notions of justice or because of personal inclinations. * * *.' "

See also Village of Heyburn v. Security Savings & Trust Co., 55 Idaho 732, 49 P.2d 258, 266; 11 Am.Jur., Constitutional Law, § 50, p. 659.

We are aware of the basic rule that, inasmuch as our Constitution is a limitation and not a grant of power, the legislature has plenary power in all matters except those prohibited by the Constitution. Idaho Const. Art. 1, § 21; Eberle v. Nielson, 78 Idaho 572, 306 P.2d 1083; Rich v. Williams, 81 Idaho 311, 341 P.2d 432. Expressions of this rule, as it relates to the power of the legislature to change the common law obligation of utilities to pay the cost of relocation of their facilities,

recognize that the legislature is powerless in the premises if there is a constitutional limitation upon the exercise of such power. And respondents' assertion that the legislature may abrogate the common law rule must be so circumscribed. The constitutional limitation upon the exercise of such legislative power is expressed In re Elimination of Highway Railroad Crossing, 259 App.Div. 141, 18 N.Y.S.2d 613, affirmed In re Lehigh Valley R. Co. and Union Road, 283 N.Y. 687, 28 N.E.2d 409, as follows:

> "The common-law obligation of a utility to relocate its own structures * * * in connection with a grade crossing * * * program continues until the *Constitution* and statute *expressly provide* otherwise." (Emphasis supplied.)

and State Highway Commission v. Southern Union Gas Co., 65 N.M. 84, 332 P.2d 1007, 1016, contains the following excellent expression of the rule:

> "In reply to the appellee's contention that the legislature can change the common law to provide for future payment of utility relocation costs, it is beyond question that the common law is subject to change by statute. That such change may not offend the constitution is equally true. *Public policy of this state is determined by the legislature but such declarations of policy*

*are restricted by the limitations of our constitution.*" (Emphasis supplied.)

And in Boise-Payette Lumber Co. v. Challis Independent School Dist. No. 1, 46 Idaho 403, 268 P. 26, 27, the rule is stated:

> "A statute cannot declare a public policy contrary to the Constitution."

See also O'Bryant v. City of Idaho Falls, 78 Idaho 313, 303 P.2d 672; Dayton Metropolitan Housing Authority v. Evatt, 143 Ohio St. 10, 53 N.E.2d 896, 152 A.L.R. 223; In re Opinion of the Justices, 324 Mass. 746, 85 N.E.2d 761; Harfst v. Hoegen, 349 Mo. 808, 163 S.W.2d 609, 141 A.L.R. 1136; 11 Am.Jur., Constitutional Law, § 139, p. 813.

State Highway Commission v. Southern Union Gas Co., supra [65 N.M. 84, 332 P.2d 1015], answers the assertion of respondents and the present Attorney General that the relocation costs should be paid "at the gasoline pumps" by those who use the highways, rather than by the users of communication and electric power through rates charged for those services; said the New Mexico Supreme Court:

> "The appellee has argued that if these relocation costs were made payable 'at the gasoline pumps' the burden would be imposed on those for whose benefit the highway construction was undertaken. We hardly feel that this is a valid argument for the constitutionality of the act but, on the other

hand, it does point out the distinction between the case at bar and the facts in Baltimore Gas & Electric Co. v. State Roads Commission, 214 Md. 266, 134 A.2d 312, and the facts in the two Walt Whitman Bridge cases, Delaware River Port Authority v. Pennsylvania Public Utility Commission, 180 Pa. Super. 315, 119 A.2d 855, and Delaware River Port Authority v. Pennsylvania Public Utility Commission, 184 Pa.Super. 280, 133 A.2d 853, reversed 393 Pa. 639, 145 A.2d 172. The Maryland case involved a tunnel and the Pennsylvania cases a toll-bridge; both facilities were self-liquidating and in neither instance was there a direct obligation on the state. Those projects were literally being paid 'at the gasoline pumps' by the users of the facilities. It is interesting to note that the Supreme Court of Maine in the Opinion of the Justices, 152 Me. 449, 132 A.2d 440, specifically held that relocation costs could be paid but that they could *not* be paid 'at the gasoline pumps.' In the instant case, if the payment of the relocation costs is a valid legislative act under our constitution, then the legislature could provide for the payment of such costs at the gasoline pumps, or it could, in its legislative discretion, provide for payment of such costs from a sales tax on bread and milk."

A further answer to the argument that relocation costs should be paid by highway users is, that respondents' permissive use of the highways is for the benefit of the utilities and their subscribers and relocation costs should therefore be paid by them as an incident of such benefit; whereas payment of relocation costs "at the gasoline pumps" by highway users would constitute an exaction for which they receive no benefit.

Respondents contend it is immaterial that the utility facilities are owned by private companies and not by the state, since the utilities are devoted to public use, and thereby the public interest is served; they point to Idaho Const., Art. 11, § 13, and I.C. §§ 62–701 and 62–705 as "expressly permitting public utility corporations to use the public highways for their facilities," as indicative of public use.

We have pointed out that the referred to section of the Constitution recognizes only the right of telephone and telegraph companies to construct and maintain their lines within this state and to connect them with other lines; and that the legislature, in the "reasonable regulations" contained in said sections of the statute, has not seen fit to grant to any telephone, telegraph or electric power utility any permanent or vested property right in any public right-of-way; on the contrary, the legislature allows permissive use only of the public

thoroughfares by utilities for their facilities, and in such manner so as not to incommode the public use of the road, highway or street.

Clearly, the legislature at all times has recognized, and continues to recognize that all roads, streets and highways are held in trust by the state and its political subdivisions for use by the public; also, that the granting by the state or political subdivision of a vested or permanent property right or interest in any public street or highway would not only be violative of such public trust, but would result in diminution of the quantum of ownership of the public in its public thoroughfares; and that so to do would constitute the giving or loaning of the credit of the state to or in aid of an individual, municipality or corporation, violative of Idaho Const. Art. 8, § 2, or a gift of the public property in violation of the implied limitations of the Constitution.

Dayton Metropolitan Housing Authority v. Evatt, 143 Ohio St. 10, 53 N.E.2d 896; 901, 152 A.L.R. 223, contains an exhaustive digest of authorities on the various phases of what constitutes "public use" and, quoting from In re Opinion of the Justices, 211 Mass. 624, 98 N.E. 611, 42 L.R.A.,N.S., 221, the Ohio Court stated:

"'* * * The dominating design of a statute requiring the use of public funds must be the promotion of public interests and not the furtherance of the advantage of individuals. However beneficial in a general or popular sense it may be that private interests should prosper and thus incidentally serve the public, the expenditure of public money to this end is not justified. Government aid to manufacturing enterprises, the development of water powers and other natural resources by private persons or corporations with public funds, either through loans or by the more indirect method of exemption from taxation or taking of stock, have been universally condemned by courts throughout the country, although often attempted by legislation.'"

The ruling of this opinion is summarized in the Court's syllabus as follows:

"A use of property to the public must be an exclusive use by the public, open to all the people on a basis of equality to such extent as the capacity of the property admits, or by some public or quasi-public agency on behalf of the public, and not simply a use which may incidentally or indirectly promote the public interest or general prosperity of the state and its people."

See also 73 C.J.S. Public, subhead Public use, p. 279 et seq.

In State v. Parsons, 58 Idaho 787, 80 P.2d 20, 22, this Court held an appropria-

tion, intended to compensate individuals injured through tortious acts of the state's agents, to be invalid since constituting a gift of public property to private persons for private purposes contrary to implied constitutional limitations; said the Court:

"It is well recognized that the power to levy and collect taxes and the power to appropriate public funds are co-existent and rest upon the same principle. If a tax cannot be levied for a particular purpose, no appropriation of public money can be made for such purpose. Gem Irr. Dist. v. Van Deusen, 31 Idaho 779, 176 P. 887; Mills v. Stewart, 76 Mont. 429, 247 P. 332, 47 A.L.R. 424. It is also well settled that taxes cannot be levied and collected, or an appropriation made, for other than a public purpose or in furtherance of the public welfare, and that any attempt so to do is a violation of the implied limitations of the Constitution."

And the Court discussed the theory of gratuitous transfer of public property in language as follows:

"* * * a so-called moral obligation will not sustain an appropriation unless such appropriation be made in furtherance of some public purpose. In San Diego County v. Hammond, 6 Cal.2d 709, 59 P.2d 478, 484, 105 A.L.R. 1155, the court said: 'It is well

settled that in determining whether any appropriation of public funds is to be deemed a gift, "The primary and fundamental subject of inquiry is as to whether the money is to be used for a public or a private purpose. If it is for a public purpose * * * it is not, generally speaking, to be regarded as a gift." ' "

In Fluharty v. Board of Com'rs, 29 Idaho 203, 158 P. 320, 321, this Court held invalid Rev.Code, § 3040. This enactment provided that the board of county commissioners of any county, in which there is a fair association or corporation having for its object the exhibition of livestock and other agricultural products of a county or of the state, may appropriate annually out of the county treasury a sum not exceeding one-half of 1 mill on every dollar of taxable property in the county to assist in defraying the expenses of the fair. The plaintiff attacked the enactment as violative of Idaho Const. Art. 12, § 4. This section of the Constitution in express terms prohibits a county, through its board of county commissioners or by vote of its citizens or otherwise, from making donations to or in aid of any company, corporation or association. The fair association admittedly was organized as a nonprofit association for the purpose of stimulating, developing and promoting the agricultural and livestock interests of the Northwest. This Court in holding the county appropria-

tion to the fair association to be in violation of the Constitution, Art. 12, § 4, even though it was urged that the "main and chief purpose of such an appropriation was for the promotion of the public interest and welfare," stated:

"* * * this association is a private corporation engaged in a private enterprise to which the county in the foregoing constitutional provision is prohibited from making a donation or appropriation. Were such donation or appropriation made, it would place county funds donated or appropriated to such corporation under the control of the corporation and its officers, which funds would be appropriated to, and expended for, other purposes than the legitimate current expenses for the lawful administration of the government of the county, and by individuals not officers of the county or amenable to the laws authorizing the expenditure of public moneys."

and in conclusion the Court commented:

"We must deal with this question as strictly a judicial one, however clear our convictions are that the purposes sought to be obtained are praiseworthy and beneficial to the public. We cannot for that or any other reason usurp authority which does not belong to us, and by judicial construction make ineffectual a plain constitutional provision, however long innocently violated. Where the Constitution, being the supreme law of the state, forbids an act, no legislative enactment can legalize it. And for this court to do other than to adhere strictly to the provision of the constitution would be an act of judicial lawlessness. Nor will the best and most patriotic intentions make that law which contradicts the principles of the Constitution or contravenes it justifiable."

See also Atkinson v. Board of Com'rs, 18 Idaho 282, 108 P. 1046, 28 L.R.A.,N.S., 412; School Dist. No. 8 in Twin Falls County v. Twin Falls County Mut. Fire Ins. Co., 30 Idaho 400, 164 P. 1174; Harrington v. Atteberry, 21 N.M. 50, 153 P. 1041; Boise-Payette Lumber Co. v. Challis Independent School Dist. No. 1, 46 Idaho 403, 268 P. 26. As was said in Mulkey v. Quillian, 213 Ga. 507, 100 S.E.2d 268, 271:

"* * * the removal and relocation of utility facilities is not a necessary or usual adjunct to the construction of highways. State-aid highways can be and are constructed and maintained without any utility facilities being located on their rights-of-way. Utility facilities are placed thereon purely for the convenience of the political subdivisions or authorities controlling the utility and serve no useful or desirable purpose in the construction and main-

tenance of the highway itself, and serve no convenience of the highway or the Highway Department."

In re Opinion of the Justices, 324 Mass. 746, 85 N.E.2d 761, 763, construed the constitutionality of a bill intended to provide that subways, tunnels, viaducts, elevated structures and rapid transit extensions constructed by Metropolitan Transit Authority to relieve traffic on the surface of the public thoroughfares, be declared public highways and bridges, and that payment for such structures be provided to be made out of Massachusetts' constitutionally dedicated highway user funds (Mass.Const., Amend. Art. 78). The Massachusetts Supreme Court in ruling the proposed bill unconstitutional stated:

"The word highway has frequently been employed in our decisions in such a manner as to indicate that it was understood to mean a roadway for persons and vehicles rather than structures erected for the exclusive use of railways. [Citations.] * * *

* * * * * *

" * * * The conclusion is irresistible that the people of the Commonwealth in adopting art. 78 of the Amendments [Constitutional Amendments] intended to make sure that the moneys exacted from owners of motor vehicles should be used solely for the purposes of highways and bridges for the use of such vehicles and could not have supposed that the highways referred to in the Amendment would include structures which were adapted exclusively for use by the cars of the Metropolitan Transit Authority and of which motor vehicles could make no use."

In City of Cincinnati v. Harth, 101 Ohio St. 344, 128 N.E. 263, 264, 13 A.L.R. 308, the Ohio Court forbade payment by a municipality of relocation costs of a utility as violative of a constitutional provision forbidding the loaning of the municipality's money and credit to a corporation; the Court pointed out that the new construction and new property contemplated to be paid for, as costs of relocation of the facilities by the municipality, nevertheless would constitute property belonging to the utility to be used and dealt with by it in every way as it might deal with and use all its other properties, which would constitute loaning the municipality's money to the credit of the utility in violation of the constitutional provision. The Court, quoting from Alter v. City of Cincinnati, 56 Ohio St. 47, 46 N.E. 69, 35 L.R.A. 737, said:

" 'A city must be the sole proprietor of property in which it invests its public funds and it cannot unite its property with the property of individuals or corporations, so that when united, both together form one property.' "

and continuing the Ohio Court made this significant statement:

"* * * it is significant that none of the cases cited support the view that in the exercise of police power the state may raise money, by taxing its citizens, and expend or give it to private persons or companies, or that it may disregard the express limitations of the Constitution."

Several states, including Idaho, have adopted legislation following the enactment, by the Congress of the United States, of the Federal-Aid Highway Act of 1956, 23 U.S.C.A. § 151 et seq.,[1] similar to Idaho Sess.Laws 1957, ch. 227, and particularly I.C. § 40–120(27) relating to the obligation of the state through its state highway department or commission to reimburse utilities for costs of relocating facilities required by widening and improving state highways under federal-aid. Five of those states, New Hampshire, Minnesota, Maine, Tennessee and New Mexico, have construed statutes which, for all practical purposes, are identical to the legislation of our state, I.C. § 40–120(27), under consideration here.

In Opinion of the Justices, 101 N.H. 527, 132 A.2d 613, 614, the constitutional question of the state giving or loaning its credit or donating its money or property does not appear to have been involved. The

principal question was whether the relocation costs could be paid from the constitutionally dedicated highway fund (N.H. Const., Part II, art. 6-a). The New Hampshire court observed:

"While the obligation to remove or relocate utility facilities is placed on the owner by the common law, the Legislature may change this rule."
and thereupon ruled:

"* * * The relocation of utility facilities is an integral part of highway improvements. The Legislature, if it chooses to do so, may validly declare that the relocation of utility facilities is part of the cost of highway relocation and reconstruction and shall be paid out of highway funds."

In Minneapolis Gas Co. v. Zimmerman, 253 Minn. 164, 91 N.W.2d 642, 653, the Supreme Court of Minnesota held that although all "gratuities and benevolences of public moneys in aid of private undertakings are prohibited" by Minn.Const., Art. 9, §§ 1 and 10, nevertheless the state constitution "does not prohibit the legislature from, by prospective action * * * fixing the conditions of performance and making provisions for the future recognition of claims for damages founded on equity and justice, although such claims would otherwise be damnum absque injuria and unenforceable against the state." The

1. Now 23 U.S.C.A. § 101 et seq.

Minnesota Court further observed, "Minnesota has been definitely committed to the view that the use of rights-of-way by utilities * * * is one of the proper and primary purposes for which highways are designed."

Idaho is not committed to either of the aforementioned policies of Minnesota. As to the first policy, Idaho Const. Art. 1, § 14, provides that compensation shall be paid for private property "taken for public use," and I.C. § 7–711 provides for damages, after the taking, to the remaining portion of the property from which the condemned portion is taken; and thus damages without taking constitute damnum absque injuria and are unenforceable against the state. Idaho-Western R. Co. v. Columbia, etc., Synod, 20 Idaho 568, 119 P. 60, 38 L.R.A.,N.S., 497; Hughes v. State, 80 Idaho 286, 328 P.2d 397. Nor has Idaho ever been committed to the theory of Minnesota's second policy mentioned, simply because in view of Idaho Const. Art. 11, § 13, and I.C. §§ 62–701 and 62–705, and the decisions of this state hereinbefore referred to, unanimously holding that the state and its political subdivisions hold public thoroughfares in trust for use by the public, only a permissive right to the use can be gained by those using them.

The Supreme Judicial Court of Maine in Opinion of the Justices, 152 Me. 449, 132 A.2d 440, 443, held that any expenditure of Maine's highway user funds for costs of relocation of utility facilities would be violative of Maine's Constitution, Art. IX, § 19, similar to and identical in import to Idaho Const. Art. 7, § 17, relating to the use of Idaho's highway user funds. The Court in so ruling, stated:

"In our opinion the relocation of a utility facility is not to be construed as construction or reconstruction of a highway within the meaning of Art. IX, Sec. 19 of the Constitution.

"We do not commonly consider that a power company in erecting a pole line or a water district in laying a pipe in a highway is constructing a highway. To an even lesser degree would we consider the construction of a pole line or a water pipe across country to be the construction or reconstruction of a highway, although the reason for the relocation was occasioned solely by changes in the highway.

"The language of the Constitution should not, in our view, be extended beyond its plain and ordinary meaning."

In State v. Southern Bell Telephone and Telegraph Co., Tenn., 319 S.W.2d 90, 92, legislation was attacked as violative of Tenn.Const. Art. 2, Sec. 31, prohibiting the loaning of the state's credit to, and in aid of persons, corporations and municipal-

ities. The Tennessee Supreme Court, in holding that such constitutional provision authorized the use of state credit only to serve a state purpose and that reimbursement of a utility for relocation costs of its facilities could not be so classified, stated:

"Under Article II, Section 31, the expenditure must be for a State purpose, which function the state performs for its general public, agencies and instrumentalities of the State for the accomplishment of a State purpose under State control; and the State must have the ' * * * right of use * * *' of the property upon which the fund is expended. [Citations.]

"The use of State credit for reimbursing utilities for removing their facilities from publicly owned right of way fails to serve a State purpose and is not for a public purpose. [Citation.]

\* \* \* \* \* \*

"We think that the basic test under this Section of our Constitution is whether the expenditure is for a State purpose. In the present case the primary purpose served by the expenditure is for the convenience and benefit of the utilities, the purpose cannot be public. [Citation.]"

and Justices Swepston and Burnett, concurring with the majority opinion holding that costs of relocating utility facilities failed to serve a public purpose, stated:

"The removal and relocation of the facilities of privately owned so-called public utilities is not a proper cost to the State of the construction of a highway, such as is the removal of natural objects consisting of rock, soil, trees, etc.; to the contrary, such facilities have all been placed there with full knowledge that the owners may be required at any time in the future to relocate them and at their own expense; such has uniformly been done up to the present.

\* \* \* \* \* \*

"If by its fiat the Legislature can authorize the expenditure of these large sums on properties in which the State has no financial interest and no control other than the regulatory powers over any corporation 'affected with a public interest', then I see no way to restrain the Legislature within the limits of Art. II, Sec. 31 of our State Constitution, whenever it may decide to do equity according to its own conception."

In State Highway Commission v. Southern Union Gas Co., 65 N.M. 84, 332 P.2d 1007, 1013, legislation attempting to authorize state reimbursement of costs of relocating utility facilities, was attacked on the ground that it was violative of N.M. Const. Art. 9, Sec. 24, prohibiting donations of state funds in aid of a private corporation. The Supreme Court of New

Mexico in holding the legislation to be unconstitutional, stated:

> "We are not unmindful of the fact that in operating its gas distribution system the Southern Union Gas Company is engaged in serving a highly commendable public purpose. But that fact alone does not warrant the state in making a donation in aid of it. * *.
>
> *  *  *  *  *  *
>
> "In conclusion, we would answer the main argument of the appellee that relocation of these utilities is a public governmental function by stating that the construction of highways is unquestionably a public governmental function but that we disagree as to relocation of utility facilities. Highways are constructed by the state on state-owned rights-of-way for the use of the public. The Southern Union Gas Company, in laying its gas lines, is acting solely for the benefit of the utility. The line is the property of the utility and to be used solely by it, neither the state nor the public having any right to use these lines. The Southern Union Gas Company is not a subordinate governmental agency nor is it fulfilling a governmental function although it is serving a highly useful purpose in the great American free enterprise tradition by furnishing for profit an essential commodity to the people of this state."

See also 18 Am.Jur., Electricity, § 18, p. 421; 52 Am.Jur., Telephone and Telegraph, § 34, p. 64; 86 C.J.S. Tel. & Tel., Radio and Television § 37, p. 51; Southern Bell Tel. & Tel. Co. v. Commonwealth, Ky., 266 S.W.2d 308; Southern Bell Tel. & Tel. Co. v. State, Fla., 75 So.2d 796; Consolidated Edison Co. of New York v. State, 276 App. Div. 677, 97 N.Y.S.2d 431, affirmed 302 N.Y. 711, 98 N.E.2d 587.

Respondents urge decisions from several jurisdictions in support of their contention that state reimbursement of costs of relocation of utility facilities are expenditures for a public purpose, authorized by I.C. § 40–120. We have considered all those cases. In those of our own jurisdiction, i. e., State ex rel. Nielson v. Lindstrom, 68 Idaho 226, 191 P.2d 1009; Newland v. Child, 73 Idaho 530, 254 P.2d 1066, and Davis v. Moon, 77 Idaho 146, 289 P.2d 614, certain laws were attacked as violative of Idaho Const. Art. 8, § 2; those cases are readily distinguishable from the one at bar, since therein this Court recognized expenditures of public moneys to be for recognized governmental functions of public welfare, and acquisition of public property for educational purposes.

In the Lindstrom case, this Court based its ruling in favor of the constitutionality of the old-age assistance act (Idaho Sess. Laws 1941, ch. 181, § 1(m), and 1947, ch. 237), upon the well recognized precept that

**514**

"the granting of aid to its needy and aged is a well recognized obligation of the state and is a governmental function, tending to promote the public welfare." [68 Idaho 226, 191 P.2d 1012.]

In Newland v. Child, supra, a proceeding attacking certain provisions of the public assistance act (I.C., §§ 56–210 and 56–224a), this Court in holding that the act was not in violation of Idaho Const. Art. 8, § 2, adopted the reasoning of the Lindstrom case.

Davis v. Moon, supra [77 Idaho 146, 289 P.2d 618], attacked an act appropriating moneys to pay principal and interest on dormitory bonds. This Court held that the act, because of its public purpose, was not violative of Idaho Const. Art. 8, § 2; that the appropriation, in furtherance of the governmental function of education, was in payment of a public building acquired by the state, through its State Board of Education, for the convenience of a normal school, "as a governmental instrumentality for the dissemination of knowledge and learning."

The nature of the expenditures in reimbursement of the utility relocation costs, as attempted to be authorized by I.C. § 40–120, does not meet the tests required by our Constitution and decisions, to remove such payments from the constitutional prohibition of giving or loaning the credit of the state in aid of a private association or corporation, or from the implied constitutional limitation against donation of public property for private purposes.

It cannot be gainsaid that if the state or any political subdivision furnished for public consumption the utility services of respondents, such would constitute a proprietory function, and not a necessary governmental function. Eaton v. City of Weiser, 12 Idaho 544, 86 P. 541, 118 Am. St.Rep. 225.

▮ The fact that respondents' activities, in furnishing services to the public, are public in nature and may be devoted to public use is insufficient to remove payment of the relocation costs from the constitutional prohibitions. The state has not acquired and cannot acquire the property of any privately owned utility, as are respondents, or any interest therein; nor any control over respondents or their officers, except in certain limited aspects through the public utilities commission; nor does the state direct the acquisition and disposition of properties, or control the financial transactions of privately owned utilities; nor is the property owned by such utilities, public property exempt from taxation as provided by Idaho Const. Art. 7, § 4; and whereas, such utilities may, and do, use their moneys and properties for profit, the state and its political subdivisions are prohibited from making a profit directly or indirectly by the use of public moneys. Idaho Const.

Art. 7, § 10. Nor is any grant authorized in favor of any utility, of a vested or permanent interest in any public thoroughfare, the right to the use being permissive and as not to incommode the public use thereof.

■ Moreover, there is no taking of private property for public use in causing relocation of the utilities' facilities in anywise violative of the eminent domain provisions of Idaho Const. Art. 1, § 14, the injury sustained, if any, being damnum absque injuria, since "uncompensated obedience to a regulation enacted for the public safety under the police power of the state was not taking property without due compensation." New Orleans Gaslight Co. v. Drainage Commission of New Orleans, 197 U.S. 453, 25 S.Ct. 471, 474, 49 L.Ed. 831, 835; Atlantic Coast Line R. Co. v. City of Goldsboro, 232 U.S. 548, 34 S.Ct. 364, 58 L.Ed. 721; State Highway Commission v. Southern Union Gas Co., 65 N.M. 84, 332 P.2d 1007; Idaho Const. Art. 1, § 14; I.C. §§ 7–711, 62–701 and 62–705. This is but a recognition of the fundamental proposition that respondents' permissive use of the public thoroughfares is subordinate to the paramount use thereof by the public.

■ We therefore hold that I.C. § 40–120(27) providing that costs of relocation of utility facilities shall be a part of the acquisition of rights-of-way, easements and other rights for and the construction, maintenance, repair, improvement and development of the public highways in the highway system included in any project on the federal-aid primary or secondary systems or on the interstate system, to be paid by the State of Idaho out of the dedicated State Highway Fund, is violative of Idaho Const. Art. 8, § 2, and Art. 7, § 17, and therefore unconstitutional and void.

■ In so ruling, we also answer respondents' assertion that, if the referred to provision of I.C. § 40–120(27), [Idaho Sess. Laws 1957, ch. 227, § 1(27)], be held to offend the Constitution, then the power of the Idaho Board of Highway Directors to order relocation would disappear, because the legislature, by Idaho Sess.Laws 1957, ch. 227, § 2, declared the legislative intention to be that the provisions of said chapter shall control over and supersede conflicting provisions of existing laws and of laws enacted by the 34th (1957) legislative session. Such is not true because the common law rule, that a utility must pay costs of relocation of its facilities on the public rights-of-way, was by implication constituted a part of Idaho Sess.Laws 1951, ch. 93, the Highway Administration Act of 1951; and attempted abrogation of the common law rule by enactment of Idaho Sess.Laws 1957, ch. 227, § 1, amending I.C. § 40–120 by adding subdivision (27), is inhibited by Idaho Const. Art. 8, § 2 and Art. 7, § 17. It is thus clear that the legislature enacted the Act of 1951 without regard to the later 1957 enactment. We therefore hold that

**516**

the unconstitutional portions of I.C. § 40-120(27) are separable and may be eliminated from the Highway Administration Act of 1951 and its 1957 Amendments. Clemens v. Pinehurst Water District, 81 Idaho 213, 339 P.2d 665, 667; State Highway Commission v. Southern Union Gas Co., 65 N.M. 84, 332 P.2d 1007, 1016.

The judgment of the district court is reversed, and the cause remanded with instructions to enter judgment, consonant with the views herein expressed, for plaintiff-appellant as prayed for in its complaint.

Costs to appellant.

BELLWOOD, CRAMER and MARTIN, District Judges, concur.

PORTER, C. J., and TAYLOR and McQUADE, JJ., not participating.

KNUDSON, Justice (dissenting).

With due deference to the majority opinion I cannot agree with the conclusions therein reached. The difference in our opinions stems from our respective views concerning the status of respondents' transportation facilities upon the highway right of way prior to removal as directed by appellant. The majority opinion holds that a utility as mentioned in I.C. §§ 62-701 and 62-705, by the construction and maintenance of their respective transportation facilities upon a highway acquires no property right and that such use is merely permissive. I feel that such view is contra to the great weight of judicial authority including decisions of the Supreme Court of the United States.

The principal constitutional and statutory provisions involved are quoted in the majority opinion which obviates the necessity of quoting them at length herein.

In order to appraise the rights, if any, which are acquired by a public utility, such as these respondents, as a result of constructing, maintaining and operating their facilities upon the public highways of this state we must consider the constitutional and statutory provisions which relate to and confer whatever rights exist. Art. 11, Sec. 13, of the Idaho Constitution provides in substance that any individual, association or corporation, properly organized, *shall have the right to construct and maintain* telegraph and telephone lines within this state, and that the legislature by general law shall provide reasonable regulations to give full effect to this constitutional provision. Said section clearly emphasizes that *the right to construct and maintain* telegraph and telephone lines within this state under reasonable regulations is to be assured. Under its terms the legislature is in effect directed to provide proper and reasonable regulations to encourage such construction and maintenance. Pur-

suant to such directive the legislature at its earliest opportunity enacted I.C. § 62–701 which grants to telephone and telegraph corporations the right to use the highways of this state for the construction of their lines. A few years later, in 1903, the legislature, no doubt anticipating the important part that electrical energy would play in the lives of future generations and having in mind the growth and development of this state, granted substantially the same rights to electric power companies by the enactment of I.C. § 62–705.

The constitutionality of said enactments (I.C. §§ 62–701 and 62–705) is not questioned and we are here only concerned with their interpretation. The State of California has for many years had a statute *identical* to I.C. § 62–701 and many times it has been referred to and construed by the Supreme Court of that state. That Court in describing the rights which a utility acquires as a result of establishing its facilities pursuant to the privilege offered under such statute has stated:

> "This section constitutes a grant of a franchise which the state offered, and petitioner accepted by the construction of its lines. The rights acquired by the telegraph company, by accepting and availing itself of the provisions of the section, *are vested rights which the Constitutions, both state and federal, protect.* They cannot be taken away by the state, even

though the Legislature should repeal the section, or by the people through a constitutional provision." (Emphasis supplied.) Postal Telegraph-Cable Co. v. Railroad Commission, 200 Cal. 463, 254 P. 258, 261.

In the case of Los Angeles County v. Southern California Tel. Co., 32 Cal.2d 378, 196 P.2d 773, 777, the Supreme Court of California while further discussing such statute said:

> "Section 536 has been judicially construed by many decisions of this court, and it has been uniformly held that the statute is a continuing offer extended to telephone and telegraph companies to use the highways, which offer when accepted by the construction and maintenance of lines constitutes a binding contract based on adequate consideration, and that the *vested right established thereby* cannot be impaired by subsequent acts of the Legislature." (Emphasis supplied.)

One of the early decisions in which the right of a public utility to maintain its facilities in a public street is discussed is the case of Boise Artesian Hot & Cold Water Co. v. Boise City, 230 U.S. 84, 33 S.Ct. 997, 1000, 57 L.Ed. 1400 wherein the city had the express power under its legislative charter to grant the right to lay water pipes upon and along its streets for the purpose of distributing water. It was contended that the grant, by ordinance of the

**518**

city, to lay water pipes upon the streets of the city was nothing more than a revocable license, the Supreme Court of the United States said:

"The right which is acquired under an ordinance granting the right to a water company to lay and maintain its pipes in the streets *is a substantial property right*. It has all the attributes of property. It is assignable, and will pass under a mortgage sale of the property and franchises of the company which owned it." (Emphasis supplied.)

In the case of Russell v. Sebastian, 233 U. S. 195, 34 S.Ct. 517, 520, 58 L.Ed. 912, the Supreme Court of the United States in discussing the rights acquired under a legislative provision such as I.C. § 62–701 stated:

"That the grant, resulting from an acceptance of the state's offer, constituted a contract, and vested in the accepting individual or corporation *a property right, protected by the Federal Constitution, is not open to dispute* in view of the repeated decisions of this court." (Emphasis supplied.)

In City of Owensboro v. Cumberland Telephone & Telegraph Company, 230 U.S. 58, 65, 33 S.Ct. 988, 990, 57 L.Ed. 1389, the United States Supreme Court had under consideration an ordinance granting to a telephone company the right to place and maintain poles and wires upon the streets of a city and in discussing the right involved said:

"That the right conferred by the ordinance involved is something more than a mere license is plain. \* \* \* The right conferred came from the state through delegated power to the city. \* \* \* That an ordinance granting the right to place and maintain upon the streets of a city poles and wires of such a company *is the granting of a property right* has been too many times decided by this court to need more than a reference to some of the later cases: [citing cases] *As a property right* it was *assignable, taxable,* and *alienable.* \* \* \* If the grant be accepted and the contemplated expenditure made, the right cannot be destroyed by legislative enactment, or city ordinance based upon the legislative power, *without violating the prohibitions placed in the Constitution for the protection of property rights.* (Emphasis supplied.)

The Supreme Court of Washington in City of Seattle v. Western Union Telegraph Co., 21 Wash.2d 838, 153 P.2d 859, 867, had under consideration a statute very comparable to I.C. § 62–701 and said:

"that the grant thus made by the state did not require that a telegraph company having the status of respondent be required to obtain the consent of

any state agency to make such grant binding, *all that was required being that the grant be accepted; that respondent accepted such grant by continued operation and maintenance* of its lines upon the streets of Seattle after the passage of the act; *that by such acceptance, the grant became a contract between the state and respondent, which could not thereafter be impaired by the state or any of its agencies;* that the grant included not only the right to operate, construct and maintain, without compensation, its lines upon the streets of Seattle so occupied at the time of the passage of the act, but also upon such other and additional streets as might be necessary in furnishing the public the service for which respondent was formed." (Emphasis supplied.)

Among the courts of other jurisdictions which have held that the statutory offer of a franchise when accepted by a public utility by the construction, maintenance and operation of its facilities results in a valid contract secured by the Federal Constitution against impairment are:

New York Electric Lines Co. v. Empire City Subway Co., 235 U.S. 179, 193, 35 S.Ct. 72, 59 L.Ed. 184, Ann. Cas.1915A, 906; City Railway Co. v. Citizens' Street Railroad Company, 166 U.S. 557, 567, 17 S.Ct. 653, 41 L.Ed. 1114; Chicago Gen. Ry. Co. v. City of

Chicago, 176 Ill. 253, 259, 52 N.E. 880, 66 L.R.A. 959, 68 Am.St.Rep. 188; State, ex inf. McKittrick v. Southwestern Bell Telephone Co., 338 Mo. 617, 92 S.W.2d 612; Arkansas State Highway Commission v. Southwestern Bell Telephone Co., 206 Ark. 1099, 178 S. W.2d 1002.

Further considering the nature of such rights it may be noted that in City of Owensboro v. Cumberland Telephone & Telegraph Company, supra, the court said that *"as a property right it was assignable, taxable, and alienable".* [230 U.S. 58, 33 S.Ct. 990.] In Western Union Telegraph Co. v. Hopkins, 160 Cal. 106, 116 P. 557, 563, the Supreme Court of California had under consideration a statute *identical* to I.C. § 62–701 and by unanimous opinion decided that the right acquired by a telegraph company by the occupation of a highway pursuant to the offer contained in such statute acquired a property right which was *subject to taxation* the same as other valuable property within the state and in discussing the question involved said:

"We are of the opinion that the weight of authority and the better reasoning support the construction given by the Visalia case [Western Union Tel. Co. v. City of Visalia, 149 Cal. 744, 87 P. 1023], viz., that the section was a grant by the state to all telegraph corporations accepting the same, of the rights therein specified. * * * And

to the extent that the offer of the state contained in the section was accepted by a telegraph company by actual occupation of highway prior to any repeal, modification, or suspension of the section, no right of revocation having been reserved, such telegraph company has vested rights that *cannot be taken away by state or city without compensation.* * * *" (Emphasis supplied.)

In support of the view expressed in the majority opinion to the effect that only a permissive use is gained by a utility accepting the offer contained in such statutes, a number of decisions of this Court are cited. Attention is called to the fact that neither Art. 11, Sec. 13, Idaho Constitution, nor I.C. §§ 62–701 and 62–705 were considered in arriving at the decision in any one of such cases. Among the cases so cited is Keyser v. City of Boise, 30 Idaho 440, 165 P. 1121, 1122, L.R.A.1917F, 1004, wherein the Court had under consideration a resolution adopted by the City of Boise authorizing the appellant to install a gasoline tank in the city street, this Court held that the *gas tank constituted an obstruction to the street* and could not be maintained. The Court said:

"The city is therefore, *without authority, in the absence of legislative enactment* * * * permitting it, to grant a private person or corporation a permit to erect or maintain a permanent obstruction in a public street or thoroughfare for a purely private purpose; *we have no such statute in this state.*" (Emphasis supplied.)

In Yellow Cab Taxi Service v. City of Twin Falls, 68 Idaho 145, 190 P.2d 681, the Court held that plaintiff could not acquire absolute right to occupy a portion of a street *for taxi use.* Here again we have no authorization by statute permitting such use. In Boise City v. Sinsel, 72 Idaho 329, 241 P.2d 173, it was held that the *building permit* involved resulted only in a permissive use by the holder. We have no statute authorizing such a use of streets or highways. In Village of Lapwai v. Alligier, 78 Idaho 124, 229 P.2d 475, the Court had under consideration a franchise, granted by an ordinance of the respondent village, which *by its terms expired prior to the commencement of the action and was never renewed.* In the case under consideration *we do have* and *are concerned with,* statutes authorizing and permitting the construction of utility lines within the highways.

It is my view that I.C. §§ 62–701 and 62–705 do confer property rights to utility companies specified therein when such utility has accepted the offer by the construction and maintenance of their lines upon the right of way. These statutes have been the law of this state for more than fifty years. No doubt public utilities which have made installations pursuant to

them have long relied upon the construction placed upon them to the effect that they have some right upon the highway. Such utility systems cannot be operated without the use of poles, conduits, wires and fixtures. These structures are permanent in their nature and require a large investment for their erection and construction. What utility would locate its facilities upon a street or highway with the understanding or knowledge that at the next meeting or change of the city council, board of county commissioners, or legislature it may be compelled *without just cause or compensation,* to remove its facilities.

It is conceded that at common law these utilities could be required to relocate their facilities at their own expense. It must also be acknowledged that the legislature has the right to enact legislation which departs from and renders inapplicable the common law rule, if such legislation is not in violation of the constitution. The majority opinion infers that the legislature's right to abrogate the common law rule must be otherwise "circumscribed" and cites a New York case wherein it is held that the common law obligation of the utility to relocate its own structures continues until the *constitution* and *statute expressly* provide otherwise. I know of no precedent in this state which will support the view expressed in said New York case. This Court has repeatedly held that our state constitution is a limitation and not a grant

of power and that the legislature has plenary power *in all matters* except those *prohibited* by the constitution. In Davis v. Moon, 77 Idaho 146, 289 P.2d 614, 617, this Court said: "The legislature has *unlimited power* to legislate where legislation *is not prohibited."* (Emphasis supplied.) It must be conceded that the rule in this state has always been to the effect that the legislature is at liberty to act upon any subject unless the constitution expressly and clearly prohibits it. Such rule is succinctly stated in Ingard v. Barker, 27 Idaho 124, 147 P. 293, 295, as follows:

"The rule would seem to be that in passing upon the constitutionality of statutes generally, no matter from what standpoint the assault thereon may be made, it is well settled that *nothing but a clear violation of the Constitution will justify the courts in overruling the legislative will;* and, where there is reasonable doubt as to the constitutionality of an act, it must be resolved in favor of the act." (Emphasis supplied.)

There is not one word in the constitution of this state that in any manner restrains or prohibits legislation relative to the use of highways by public utilities. To the contrary, Sec. 13, Art. 11 of our Constitution is a clear mandate to the legislature to provide regulations so as to give full effect to the right to construct and maintain transmission facilities in this state. It is my

view that by enactment of Ch. 227 of the Idaho Session Laws of 1957 the legislature rendered inapplicable such common law rule as concerns the issues here involved.

Considering that Sec. 13, Art. 11 of our Constitution provides that the utilities referred to therein *"shall have the right"* to construct and maintain lines within this state and that "the legislature shall * * * provide reasonable regulations *to give full effect to this section"*, and considering also that I.C. §§ 62–701 and 62–705 have been upon the statute books since early statehood it is clear that the framers of the constitution and the legislature have conclusively established that to encourage the construction and maintenance of such utility lines upon highway rights-of-way is a firm public policy of the state.

Whatever may be the view of others it is clear to this writer that these constitutional and statutory provisions do not support a contention that the sole purpose of highway rights-of-way in this state is limited to travel and the transportation of persons and property in movable vehicles. They are, in my judgment, designed and intended as avenues of communication, travel and transportation and that the installation and maintenance upon them of public utility facilities for transmission of intelligence, communications and electrical energy is certainly a proper, if not a primary purpose, for which they are designed.

The utilities herein concerned are regulated under the police power of the state; they are engaged in the business of furnishing communication and electric power to the public at just, reasonable and controlled rates; they are under a legal duty to serve the public; their business is affected with a public interest and confers important and direct benefits upon the public; the use of highway rights-of-way for the location of their transmission facilities promotes the extension of such service to the greatest number of people at a cost less than would otherwise be expected.

The cases most heavily relied upon by appellant and in the majority opinion are State Highway Commission v. Southern Union Gas Company, 65 N.M. 84, 332 P. 2d 1007, and State v. Southern Bell Telephone & Telegraph Co., Tenn., 319 S.W. 2d 90.

Each of these cases holds that a statute authorizing reimbursement to a public utility of replacement cost is repugnant to a constitutional prohibition that a state shall not lend or pledge its credit. Upon examination of said decisions it will be found that no reference or mention is made in the decision of either court, to any constitutional provision comparable to Art. 11, Sec. 13 of our Constitution or to any statutory provision comparable to I.C. §§ 62–701 or 62–705. I therefore assume that neither court had either of such provisions to deal

with in arriving at its decision and did not consider any comparable provisions.

The New Mexico court does not recognize that a public interest or public purpose is any criterion by which the validity of an appropriation of public funds is to be measured. This Court has repeatedly held that it is an important if not controlling factor to be considered. Among the recent decisions of this Court wherein such public purpose is discussed is Newland v. Child, 73 Idaho 530, 254 P.2d 1066, 1070, and the Court said:

> "It is this public purpose which saves the entire public assistance law from direct conflict with Section 2, art. 8, Idaho Const., * * *" (Emphasis supplied.)

In the case of Davis v. Moon, 77 Idaho 146, 289 P.2d 614, 618, this Court said:

> "Moreover, the appropriation act here under consideration is saved from conflict with Idaho Const. art. VIII, sec. 2, providing that, 'The credit of the state shall not, in any manner, be given, or loaned to, or in aid of any individual, association, municipality or corporations * * *.' by the fact that such enactment is for a *public purpose.* (Emphasis supplied.)

It is undebatable that the establishment, maintenance and control of public roads and highways in this state is a public purpose embraced and included within the police powers of the state. By reason of the foregoing mentioned distinguishing features I do not feel that the decisions in the Tennessee and New Mexico cases hereinbefore referred to are in point.

One of the constitutional questions here before us has been considered in many other jurisdictions having comparable constitutional restrictions against lending aid and credit to individuals, etc. Among them is the Supreme Court of New Hampshire and in an advisory opinion wherein that court had under consideration a statute similar to chapter 227 here involved, that Court said:

> "While the obligation to remove or relocate utility facilities is placed on the owner by the common law, the Legislature may change this rule. (Citing cases.) This principle was expressed in the recent Opinion of the Justices, 152 Me. 449, 132 A.2d 440 as follows: 'The State, however, may, in our view, pay for the cost of relocating such facilities, if it chooses to do so. The purpose of such expenditures is *public in nature*, and the extent and conditions under which the State may meet such costs are for the Legislature to determine.' The common-law rule which places the costs of relocating utility facilities on the owner 'specifically admits of legislative change.' Relocation of Public Utilities Due to Highway Improvement—An Analysis

of Legal Aspects, Highway Research Board Special Report 21, p. 40 (1955). *If the Legislature decides to make such a change it would not be a violation of our Constitution, Part II, Article 5th or Part I, Article 10th."* (Citing cases.) (Emphasis supplied.) Opinion of the Justices, 101 N.H. 527, 132 A.2d 613, 614.

One of the leading cases wherein a statute identical in legal effect to chapter 227 here involved is the case of Minneapolis Gas Co. v. Zimmerman, 253 Minn. 164, 91 N.W.2d 642, 651, and in construing the state's constitutional prohibitions against the state lending aid or credit to individuals the court said:

"We have already pointed out that the use of rights-of-way by utilities for locating their facilities is one of the primary purposes for which highways are designed, even though their principal use is for public travel and transportation of persons and property. It follows that where it becomes reasonably necessary to relocate such utility facilities in order to improve the highway for public travel * * * an expenditure of funds to effect such relocation is *properly a governmental function* exercised for a *public purpose* of primary benefit to the entire community. It is primarily for a public purpose not only because the relocation is made necessary in order to expedite public

travel and transportation, but also for other substantial reasons." (Emphasis supplied.)

The Supreme Court of the state of Maine in passing upon similar legislative and constitutional provisions in Opinion of the Justices, 152 Me. 449, 132 A.2d 440, 443, had this to say:

" * * * At common law there is no obligation to pay for the removal or relocation of public utility facilities required by changes in highways. (Citing cases.) The State, however, may, in our view, pay for the cost of relocating such facilities, if it chooses to do so. *The purpose of such expenditures is public in nature, and the extent and conditions under which the State may meet such costs are for the Legislature to determine."* (Emphasis supplied.)

One of the recent cases considering a like question is Wilson v. City of Long Branch, 27 N.J. 360, 142 A.2d 837, 847, wherein the Supreme Court of New Jersey upheld the constitutionality of a legislative act authorizing the payment of the expense of a utility relocation necessitated by an urban redevelopment plan and said:

"Utilities are necessary adjuncts of the public welfare. Their business operations and their property have been subject to special legislative treatment for many years. * * * In the pres-

ent context, uninterrupted service during and after the completion of the redevelopment project is vital. Where removal of the facilities is necessary, it is important that the relocation be as expeditious and as controversy-free as possible. That end is intimately related to the achievement of the overall *public purpose.* * * *." (Emphasis supplied.)

In State v. City of Dallas, Tex.Civ.App., 319 S.W.2d 767, 775 the court in considering the right of the state to reimburse a utility described the rights of a utility acquired by the construction and maintenance of its facilities in and upon the public ways as "valuable property rights" which are "protected by constitutional guarantees" and while discussing a statutory provision comparable to chapter 227 the court said:

"We believe that House Bill 179, etc., Article 6674W–4 is valid and constitutional and does not donate public monies to corporations nor is it a gift or loan of the credit of the State, or a release of the obligations of corporations or individuals, or an appropriation for private or individual purposes, in violation of sections 50, 51 and 55 of Article III of the Constitution of Texas, or Section 6 of Article XVI."

To aid in determining whether or not an act is for a public purpose I deem it proper to consider that which gave rise to its enactment. The congress of the United States has enacted legislation looking to the building of super interstate highways wherein provision has been made for participation by the states in the building of a vast system of public roads. Among other things such legislation provides that the costs of relocation of public utility facilities, such as are here involved, would on such Federal Aid projects be shared by the Federal Government and the state on a percentage basis. The utility company involved would be reimbursed the actual cost attributable to such relocation after deducting any increase in the value of the new facility and any salvage value derived from the old facility. The reimbursement is confined to non-betterment cost and merely restores the utility to the same position it was prior to the relocation, it gains absolutely nothing.

It is common knowledge that many of our highways are clogged with vehicular traffic. The building of super highways has become a matter of public necessity due to the inadequacy of our present highways. The legislature of this state has seen fit to participate with the Federal Government in building a system of interstate highways and by the enactment of chapter 227 has authorized and directed the state's cooperation in the Federal Aid highway program. The result is that by vir-

tue of said chapter 227 the state is primarily engaged in building a system of public roads, which is and always has been, regarded as a public purpose.

There are well reasoned cases wherein the constitutionality of such legislation as chapter 227 is upheld on the theory that justice and equity require the reimbursement therein provided for. A leading case is Oswego & S. R. Co. v. State, 226 N.Y. 351, 124 N.E. 8, 10 wherein the writer of the opinion Justice Cardozo included the following:

"The state was about to execute a great public work. It saw that in the doing of that work there would be destruction of private property. Much of the damage would be damnum absque injuria. None the less it would be damage. The result would be inequality in the distribution of public burdens. Some would pay more dearly than others in proportion to benefits received. This inequality the Legislature, fixing in advance the conditions of the undertaking, had the power to correct. It might refuse to launch an enterprise at the price of hardship and oppression. There was power to destroy, and leave the loss where it might fall. There was also power to pay for the destruction, and thereby re-establish some uniformity of proportion between benefits and burdens. The question was for the Legislature whether the equity of compensation was strong enough to merit recognition. We cannot hold it to be illusory."

The recognition of an equitable and moral obligation as justifying the disbursement of public monies for a public purpose has been considered by this Court and it held that when the legislature has properly authorized and directed the disbursement of public money to meet a moral obligation, connected with a public purpose, it does not violate the constitutional provision here considered. In the case of Newland v. Child, supra [73 Idaho 530, 254 P.2d 1070], this Court said:

"We held in State ex rel. Nielson v. Lindstrom, 68 Idaho 226, 191 P.2d 1009, 1012, that 'The granting of aid to its needy aged is a well recognized obligation of the state and is a governmental function tending to promote the public welfare.' * * *

"*The 'obligation of the state' referred to in the Lindstrom case is to be understood as a moral rather than a mandatory obligation.*" (Emphasis supplied.)

Again in the case of Davis v. Moon, supra [77 Idaho 146, 289 P.2d 618], where it was contended that an appropriation of state monies to pay both principle and interest on college dormitory bonds was unconstitutional this Court said:

"Further, the enactment is not invalidated, in the light of its public purpose, merely *because the obligation of the state in relation to the subject matter of such legislation is a moral rather than a mandatory one*, Gem Irrigation District v. Gallet, 43 Idaho 519, 253 P. 128; Newland v. Child, supra; 81 C.J.S. States § 133, p. 1150; 42 Am.Jur. Public Funds, sec. 621, p. 763, *nor by the fact that a private individual or organization may benefit thereby.*" (Emphasis supplied.)

I cannot agree with the conclusion reached in the majority opinion that said chapter 227 violates Art. 7, Sec. 17 of our constitution. It is my view that the word "construction" as used in said section of our constitution embraces everything connected with and necessarily incident to the complete accomplishment of construction. As was observed by the trial court in this case "it is common knowledge that the highway department frequently relocates farm fences, irrigation works and driveways when it widens and relocates a highway, and the expense of doing so is an incident to and properly considered a cost of construction." Among the many decisions supporting such a view is the case of Minneapolis Gas Co. v. Zimmerman, suprà [253 Minn. 164, 91 N.W.2d 649], wherein the Minnesota court said:

"* * * *it would be unrealistic to construe the broad language of Minn.Const. art. 16, §§ 2 and 6, so narrowly as to prohibit the legislature from authorizing the use of highway funds for the non-betterment location of utility services as a proper cost of highway construction, reconstruction, improvement, and maintenance.*" (Emphasis supplied.)

To the same effect is the decision of the Supreme Court of New Hampshire (see Opinion of the Justices, 101 N.H. 527, 132 A.2d 613, 616) construing a constitutional provision which is almost the exact counterpart of Sec. 17 here considered, and the Court held that:

"The relocation of utility facilities is an integral part of highway improvements. The Legislature, if it chooses to do so, may validly declare that the *relocation of utility facilities is part of the cost of highway relocation and reconstruction and shall be* paid out of highway funds." (Emphasis supplied.)

In the case of Department of Highways v. Pennsylvania Public Utility Commission, 185 Pa.Super. 1, 136 A.2d 473, 483, the Court said:

"When the Commonwealth, in order to improve a highway crossing a railroad, orders a public utility company to relocate its facilities placed within

the right-of-way with the Commonwealth's permission, the payment, under statutory authority, of a part of the cost of such relocation *is a part of the construction cost of the highway improvement,* and is not a gratuity of the type prohibited by the Constitution". (Emphasis supplied.)

In the majority opinion it is stated in substance that the legislature specifically limited the utilities' use of the public roads, streets and highways by the language "as not to incommode the public use of the road or highway" which is contained in §§ 62–701 and 62–705. With such interpretation I do not agree. The plain language used in said § 62–701 refers solely *to construction* of lines and *erection* of poles, etc. It is the original *construction* of lines and *erection* of poles, etc. which is directed to be done in such manner and at such points so as not to incommode the public use of the road or highway. There is not one word in said section which needs construction, and as this Court has repeatedly said it is a primary canon of statutory construction that where the language of a statute is unambiguous, the clear expressed intent of the legislature must be given effect and there is no occasion of construction. Surely we are justified in assuming that if the legislature intended any limitation other than is plainly stated it would have found and used words to express such intention.

Nor can I agree with the view expressed in the majority opinion that if by the acceptance of the offer contained in said I.C. §§ 62–701 and 62–705 a property right became vested in the acceptor it would constitute a violation of the Idaho Constitution, Art. 8, Sec. 2, by giving or loaning the credit of the state. I know of no constitutional provision which prevents the granting, in the manner provided by law, of any easement, interest or title in or to lands owned by the state. In fact highway rights-of-way, or portions thereof, are frequently conveyed, exchanged, abolished, abandoned or otherwise dealt with pursuant to authority conferred by statute.

In support of the contention that a right is acquired by a utility when it constructs its transportation facilities upon a highway pursuant to said §§ 62–701 and 62–705, attention is called to the fact that each of said statutes specifically provides that *a right* is involved. The first words used in § 62–701 are *"Right* to use highways" and in § 62–705 it is specifically provided that the utility "shall have and is hereby given *the right* to erect, construct, maintain and operate * * *". Without attempting to define such right, suffice to say that it is the opinion of this writer that by the construction and operation of transportation facilities upon the highway such utility ac-

quired a right to remain there subject to reasonable exercise of the police power of the state and that such right cannot be taken away without just compensation. In Western Union Telegraph Co. v. Hopkins, supra, the state of California described such right in the following language:

> "Of course, the liability of plaintiff to all such reasonable regulations as is warranted in the proper exercise of the police power cannot be disputed. In fact, this is expressly stipulated by the provisions in section 536, Civil Code, that the system of the telegraph company must be constructed 'in such manner and at such points as not to incommode the public use of the road or highway.' But in so far as actual occupation of a highway by a telegraph company was taken or had under section 536, Civil Code, *we are of the opinion that a vested right resulted,* subject only to the proper exercise of the police power, and that *it must be held that there was no such reservation as warranted such right being taken away without compensation.*" [160 Cal. 106, 116 P. 563.] (Emphasis supplied.)

In this case the legislature has concluded that just compensation is the amount of relocation costs. It is my opinion that I.C. § 40–120, as amended by the Idaho Sess. Laws of 1957, Ch. 227 does not offend any provision of our Constitution, and that the judgment of the district court should be sustained.

### On Denial of Petition for Rehearing.

Respondents in their petition for rehearing again assert their acquisition of a property right or interest in the public thoroughfares by virtue of the placing thereon of their facilities, again urging Idaho Const., Art. 11, § 13; I.C. §§ 62–701 and 62–705 and various authorities.

While the right so to place utility facilities and use the public thoroughfares has the attributes of property, Boise Artesian Hot & Cold Water Co. v. Boise City, 230 U.S. 84, 33 S.Ct. 997, 57 L.Ed. 1400, such is not, and cannot ripen into, a permanent vested property right in fee, as we held in our original opinion and continue so to hold. This is true simply because, in summary:

First, Idaho Const., Art. 11, § 13, recognizes only the right of telephone and telegraph companies to construct and maintain their lines within this state and connect the same with other lines, leaving it to the legislature to provide the "reasonable regulations" therefor; and the legislature, by I.C. § 62–701 relating to telephone and telegraph companies, and I.C. § 62–705 to electric power companies, enacted the "rea-

sonable regulations"; thereby the legislature granted to those utilities the right to the use of the public thoroughfares for placement of their facilities thereon,—but nevertheless defeasible,—in such manner and at such points or places as not to incommode the public use of such thoroughfares, thereby recognizing that the sovereign and its political subdivisions hold the public thoroughfares in trust for use by the general public.

Second, inasmuch as the sovereign in the exercise of its police power, where convenience and necessity of the paramount public use so require, may cause removal of the facilities at the expense of the utility companies, since their right to the use of the public thoroughfares, as to the manner and points or places of location thereon of their facilities, is subordinate and defeasible, there is no taking of property of the utilities without due process in violation of either the Constitution of the United States or of the State of Idaho, U.S. Const. Amend. 14; Idaho Const. art. 1 § 13.

The petition for rehearing is denied.

BELLWOOD, CRAMER and MARTIN, District Judges., concur.

KNUDSON, J., dissents.