241 P.2d 173

BOISE CITY v. S.NSEL et al.

No. 7749.

Supreme Court of Idaho.

Feb. 13, 1952.

C. Stanley Skiles, Boise, for appellant.

Maurice H. Greene, Boise, for respondent Nellie V. Sinsel.

Bryan P. Leverich, Salt Lake City, Utah, L. H. Anderson and E. H. Casterlin, Pocatello, for respondents Oregon Short Line R. Co. and Union Pac. R. Co.

PORTER, Justice.

By this action, appellant seeks a mandatory injunction commanding respondents to eliminate and remove an encroachment and obstruction consisting of part of a building, situate upon a public street of Boise City, and seeks a permanent injunction restraining respondents from obstructing such street. The cause was tried to the court sitting without a jury. The court made findings of fact, conclusions of law and entered judgment dismissing the action. From such judgment appellant appeals to this court.

The controlling facts in this case are not seriously contested. In the year 1867 a plat of Boise City was executed and filed in the office of the Recorder of Ada County by the Mayor of the city. This plat laid out and designated as public streets, Front Street, running generally east and west, and Eighth Street, running generally north and south, both 80 feet in width. In the year 1870 the Federal Government issued a patent to the Mayor of Boise City in trust for the land included within said plat.

Prior to the year 1927, only 40 feet of Front Street was used for vehicular traffic. The north 20 feet of said street was used for sidewalk and parking. The south 20 feet was traversed by an open irrigation ditch running east and west between Eighth Street and Ninth Street. The street was

curbed along a line 20 feet north of its south side.

The Oregon Short Line Railroad Company owns the land immediately adjacent to the southwest corner of the intersection of Front Street and Eighth Street. In the year 1927 such railroad company leased to C. J. Sinsel, the husband and predecessor in interest of respondent Sinsel, for a term of five years, a parcel of land 18 feet wide and 150 feet long, extending west from the west line of Eighth Street adjacent to the south boundary of Front Street. Such lease provided that the lessee, at his expense, would remove from said premises all structures and other property placed thereon by the lessee within 30 days after the termination of the lease.

On June 21, 1927, C. J. Sinsel appeared before the City Council where the following proceedings were had as shown by Defendants' Exhibit No. 5:

"Extract

From Minutes of Council Meeting
Held June 21, 1927, Tuesday, 9:00
O'Clock A.M.

Mayor *Hanson* in the Chair.

Roll Call showed the following Councilmen present. *Cody,* Roan. Absent: Worthington.

* * * * * *

"C. J. Sinsel stated he had leased the property of the Oregon Short Line on the west side of Front Street at 8th Street and it was his intention to erect a modern packing plant on the site if permission could be granted for the building of a concrete structure projecting eight feet into Front Street and a concrete platform, truck height, extending to the curb. Mr. Sinsel further said it was his intention to erect a sidewalk the entire length of the block over the open ditch now there.

"Moved by Councilman Roan that the building inspector be instructed to issue a permit to Mr. Sinsel as requested.

"Councilman Cady seconded the motion.

"Ayes: Cady, Roan.

"All voting in the affirmative the motion was declared carried.

* * * * * *

"Approved:
Walter Hansen
Mayor

"Attest:
Angela Hopper
City Clerk"

On July 14, 1927, C. J. Sinsel filed application for building permit together with his plans and specifications for the erection of a reinforced concrete one-story building upon the land leased from the railroad company and extending 8 feet into Front Street, together with a loading platform extending an additional 10 feet into Front Street. Having secured a building permit, Sinsel erected the building and loading platform in question which extend a total distance of 19 feet and 6 inches into Front Street for a distance of 150 feet west from the intersection of Eighth Street and Front Street. Apparently, Sinsel also covered the open ditch from Eighth Street

334

to Ninth Street, such ditch running under the loading platform.

The lease to C. J. Sinsel and his successor in interest, the respondent, Nellie V. Sinsel, has been renewed from time to time by the Oregon Short Line Railroad Company and its lessee, Union Pacific Railroad Company, and was in force and effect at the time of the commencement of this litigation.

In the year 1933, Front Street was made a part of the state highway system and designated as U. S. Highway No. 30. Traffic on Front Street has steadily increased since such designation. In 1948, the curb on the south side of Front Street was set back to the south property line making the portion of the street used for vehicular traffic 60 feet wide both east and west of the Sinsel warehouse. Front Street is now a main traveled, arterial street, carrying both U. S. Highway No. 30 and U. S. Highway No. 20.

Front Street is presently maintained as a four-lane street for vehicular traffic east and west of the Sinsel warehouse and as a three-lane street where it passes such warehouse. Traffic on the street is heavy and at times congested. Numerous accidents occur in the vicinity of the intersection of Eighth and Front Streets. The warehouse of respondent Sinsel not only occupies and obstructs the street, but large trucks and vans unloading at the platform add to the traffic hazard. There is herein inserted a replica of that part of Plaintiff's Exhibit No. 14 which shows the location of the warehouse and loading platform and of Front Street and Eighth Street as they are now used and maintained.

On December 12, 1949, the City Council of Boise City adopted the motion shown by Plaintiff's Exhibit No. 8, reading as follows:

"Extract
From Minutes of Council Meeting
Held December 12, 1949, Monday, 7:30

O'Clock P.M.

"Council met in regular session at 7:30 o'clock P.M. Mayor Howard presiding.

Roll call showed the following members present: Burt, Graham, Grim and Hardy.

City Attorney C. Stanley Skiles, present. City Clerk Fred R. Bagley, present.

\* \* \* \* \* \*

"Moved by Burt Seconded by Graham that the encroachments by the properties and buildings known as Bunting Tractor Company, the Sinsel warehouse and Davison Grocery Wholesale which encroachments are in and upon the public street known as Front Street be removed, and that any permit heretofore granted for such encroachments and obstructions be hereby cancelled and revoked. That the said encroachments and obstructions are a nuisance and the same, and each of them, are dangerous and constitute a hazard to the public and vehicular traffic over and upon Front Street, and the City Attorney take appropriate action for the removal and abatement of such encroachments and obstructions.

"Roll call on the motion resulted as follows:

"Yeas: Burt, Graham, Grim and Hardy.

"Motion carried.

&ast; &ast; &ast; &ast; &ast; &ast;

"No further business the meeting adjourned.

"Approved:

Potter P. Howard
Mayor

"Attest:

Fred R. Bagley
City Clerk"

The conclusions of law of the trial court epitomized were, (a), that the proposal and application for building permit by C. J. Sinsel and the action of the council in directing the issuance of the permit constituted a contract and that such contract is valid and existing, (b), that this suit for mandatory injunction is not proper because the proceedings of the council declaring the Sinsel warehouse a nuisance were insufficient to constitute the foundation for this action, (c), that the city is estopped from maintaining this action without doing equity; and that the city has an adequate remedy through the exercise of its power of eminent domain; and (d), that the railroad companies did not participate in the creation of the obstruction, are not participating in its maintenance, and are not liable for its removal.

The principal assignments of error by appellant in their cumulative effect, challenge these conclusions of law. We will consider the conclusions of law in the order above set out.

 The application for the building permit and the issuance thereof resulted only in a permissive use and did not vest in C. J. Sinsel a property or contractual right. Keyser v. City of Boise, 30 Idaho 440, 165 P. 1121, L.R.A.1917F, 1004. The statement by Sinsel that it was his intention to erect a sidewalk the entire length of the block over the open ditch was merely an expression of an intention to do something in furtherance of the use of his warehouse and was not a covenant constituting consideration. It was not carried into the application for building permit. As to the actual construction thereafter, 150 feet of the open ditch was under the platform of his warehouse and the record is not clear as to how he covered the remainder of the ditch.

██ Further, the Council of Boise City, in the absence of statute, was without power to make a valid contract permanently alienating a part of Front Street or permitting a permanent encroachment and obstruction thereon limiting the use of the street by the public. Boise City v. Hon, 14 Idaho 272, 94 P. 167; Boise City v. Wilkinson, 16 Idaho 150, 102 P. 148; Yellow Cab Taxi Service v. City of Twin Falls, 68 Idaho 145, 190 P.2d 681. In Keyser v. City of Boise, 30 Idaho 440, at pages 444–445, 165 P. 1121, at page 1122, this court said:

"The authorities dealing with the question raised by the demurrer are conflicting, but we are of the opinion that the sounder rule and the rule supported by the better-reasoned cases, is to the effect that the streets, from side to side and end to end, belong to the public, and are held by the municipality in trust for the use of the public. The city is therefore without authority, in the absence of a legislative enactment expressly permitting it, to grant a private person or corporation a permit

to erect or maintain a permanent obstruction in a public street or thoroughfare for a purely private purpose; we have no such statute in this state. It follows that anyone obtaining a permit from the city, for the private use of a public street, as in this case, takes the same with notice that it is subject to revocation at the will of the city, and, indeed in this view, it matters not whether the use is made in accordance with a permit or without one, the use is merely permissive in either event, and revocable at any time without notice. If the person making such private use of a street goes to expense, he does so at his own risk, and he will not be heard to complain that his property is being taken without due process of law.

"The holder of a permit to install an obstruction in a public street or thoroughfare, for a private purpose, acquires no property or contractual right by reason of the issuance to him of such permit, and whenever the city authorities, in their discretion, deem it necessary, as a proper police measure, to vacate and revoke such permit, the holder of the same has no alternative, but must comply with the order of revocation."

█ The position of respondents is not aided by the fact that the part of the street upon which the building was erected was not then being used for traffic. The delay of the city in opening the whole of Front Street for traffic did not take away from it the right to open the remainder thereof. Boise City v. Hon, supra.

██ The warehouse and platform encroaching on Front Street and obstructing traffic thereon is a public nuisance under the provisions of Sections 18–5901, 52–101, 52–102 and 52–111, I.C. Its character as a public nuisance is not dependent upon action by the city council finding and declaring it to be a nuisance. Boise City, under its special charter, is given the power to abate a public nuisance. The action of the city council in cancelling the permit and authorizing legal action to abate the nuisance was sufficient. Keyser v. City of Boise, supra.

█ The encroachment of the warehouse upon the public street and its interference with the free flow of traffic thereon is a nuisance per se. Mandatory injunction is a proper remedy to be invoked to restrain the maintenance of such obstruction upon the public street, although the injunctive order may necessitate affirmative action. Ryan v. Weiser Valley Land, etc., Co., 20 Idaho 288, 118 P. 769; Evans v. District Court, 47 Idaho 267, 275 P. 99; City of Emporia v. Humphrey, 132 Kan. 682, 297 P. 712; 28 Am.Jur., Injunctions, Section 147; 25 Am.Jur., Highways, Secs. 272–273; Sutherland v. Winnsboro, Tex.Civ.App., 225 S.W. 63. It is immaterial that the city may have other cumulative remedies. City of Emporia v. Humphrey, supra, City and County of San Francisco v. Buckman, 111 Cal. 25, 43 P. 396; McQuillin on Mun. Corp., 2d Ed., Rev., Vol. 4, Sec. 1475, pp. 205–208.

There are many conflicting decisions on the questions of whether and when equitable estoppel will lie against a municipality. The various authorities are collected and discussed in Town of Chouteau v. Blankenship, 194 Okl. 401, 152 P.2d 379, 171 A.L.R. 87 and Annotation pages 94–171; see also, City of Mollalla v. Coover, Or., 235 P.2d 142.

In this jurisdiction we have recognized that equitable estoppel will lie against a municipality but that it must be invoked with caution and only in exceptional cases and that its application is the exception and not the rule. Lloyd Crystal Post No. 20, The American Legion v. Jefferson County, 72 Idaho 158, 237 P.2d 348; Boise City v. Wilkinson, supra. In neither of such cases was there involved the exercise by a city of its police power over a street open and in use by the public. In Yellow Cab Taxi Service v. City of Twin Falls, supra, it was held that as a general rule estoppel will not be applied to prevent a municipality from exercising its police power. See also 38 Am.Jur., Estoppel, 374.

The encroachment of the warehouse in question presents a real traffic hazard. Its removal is required by the volume of vehicular traffic on Front Street. To deny relief to the city in this action would require condemnation by the city with liability for the removal of the encroachment and damage to the building. Respondent Sinsel and her predecessor in interest have enjoyed an advantageous location for their warehouse for a period of nearly 25 years by the use, rent free, of a portion of Front Street 19½ feet wide and 150 feet long. They have paid rent of $130 per year to the railroad companies for the private land occupied by the building but nothing to the city. The warehouse was erected partly on the street by C. J. Sinsel with full knowledge and without consideration to the city. The building of the sidewalk by Sinsel on Eighth Street along the end of the warehouse is inconsequential. We are not concerned here with a stale, legal demand or right of the city to open an unused street but with the present necessity of the city to abate a hazardous obstruction in an open and used street and with its right to do so in the exercise of its police power. We conclude the facts in this case do not require or justify the granting to respondents of the exceptional relief of equitable estoppel.

Respondent Sinsel pleaded and proved an offer to remove the loading platform leaving only an encroachment of 8 feet upon the street and to set back the northeast corner of the warehouse, thereby increasing vision at the intersection of the streets, and a failure of the city to accept such offer. An acceptance of such offer by the city or a requirement that it accept same would amount to an authorization of a permanent encroachment and obstruction upon Front Street. Such authorization is beyond the powers of the city. "Also, a municipality cannot author-

ize any use of its streets by a private person inconsistent with the future legitimate uses of the street by the municipality, and no right to use the street for private purposes can be acquired by prescription as against the municipality." Yellow Cab Taxi Service v. City of Twin Falls, supra [68 Idaho 145, 190 P.2d 683.]

The trial court found upon sufficient evidence, "That said building and loading platform were constructed and at all times since have been maintained at the sole expense of the said C. J. Sinsel and his successor in interest. That at no time has the owner of said building been, or acted, as agent of the defendant railroad companies in any matters concerning said warehouse, and that neither defendant railroad company has given its consent, counsel, aid or assistance to the said C. J. Sinsel or his successors in and about the construction, maintenance, operation or control of said buildings; that neither railroad company has received any benefits directly or indirectly from the use or occupation of said building;". Upon these facts the court concluded this action could not be maintained against the railroad companies.

Appellant, to sustain its claim for an injunction against the railroad companies, relies particularly upon Section 42(14) and Section 42(16) of the Special Charter of Boise City. These sections appear in the 1939 Session Laws at pp. 443 and 444 respectively. Section 42(14) provides in effect that the city may remove nuisances and collect by suit the expense thereof or charge the same against the land upon which said nuisances existed by certifying said amount to the tax collector, and that thereupon the same shall be a lien collected as other city taxes. Neither has the city removed the obstruction and thereby incurred expense nor does the city seek by its amended complaint an alternative order authorizing the city to remove the obstruction and charge the expense thereof against the land owner or the property. The meaning and effect of such section is immaterial in this action for injunctive relief.

The material part of Section 42(16) is as follows: "To provide for the prevention and removal of encroachments and obstructions from the streets, sidewalks * * * and to compel owners * * * of lands abutting * * * thereon to remove such obstructions and repair such street, sidewalks * * *." Before an injunction will lie under such section against the owner of abutting land requiring the removal of an obstruction, some participation by such owner in the erection or maintenance of the obstruction must appear. The remedy of injunction is exercised in personam. 28 Am.Jur., Injunctions, 199. "An injunction will not be issued restraining a defendant from taking certain action unless he is himself the person attempting to take such action or is the person in control thereof." 43 C.J.S., Injunctions, § 34, p. 467. Injunctive re-

340

lief will not be granted against the respondents, the railroad companies, who have neither caused, created, maintained or threatened to maintain the nuisance in question nor participated in such acts.

The judgment as to the respondent, Nellie V. Sinsel, is reversed with instructions to enter judgment for appellant for the mandatory injunction requiring such respondent to remove the encroachment within a reasonable time to be fixed by the court, and granting the permanent injunction. The judgment as to the respondents, Oregon Short Line Railroad Company, a corporation, and Union Pacific Railroad Company, a corporation, is affirmed. Costs awarded to appellant against respondent Sinsel and to respondents, the railroad companies, against appellant.

TAYLOR, THOMAS and KEETON, JJ., and SUTPHEN, D. J., concur.