362 P.2d 1088

Roscoe C. RICH, Leonard K. Floan and Wallace C. Burns, Idaho Board of Highway Directors, Plaintiff-Respondent,

v.

L. L. BURDICK and Veda Mae Burdick, his wife, Defendants-Appellants,

and

The Texas Company, a corporation, Defendant.

No. 8948.

Supreme Court of Idaho.

June 22, 1961.

O. R. Baum, Ben Peterson, Ruby Y. Brown, Pocatello, for appellants.

Wm. R. Padgett, Legal Counsel for State Highway Department, and Anton Hohler, Boise, for respondent.

TAYLOR, Chief Justice.

Plaintiff (respondent) Idaho Board of Highway Directors, brought this action for a judgment requiring the defendants (appellants) to remove certain obstructions, erected and maintained by them, from U.S. Highway 30, in the village of Bennington, in Bear Lake county. The obstructions consist of two gasoline pumps, a concrete island, with canopy and signs. From a judgment requiring such removal, the de-

fendants, Burdick and wife, brought this appeal.

This controversy arose when the state highway department, in preparation for improving the highway through Bennington, determined that the gas pumps, concrete island, canopy and signs in front of defendants' service station, cafe, and store building, had been erected and were maintained in and upon the highway right of way. The department contends that the highway as laid out and established, was 99 feet wide and that the planned improvements require the use of the entire width. The defendants allege that the highway as originally laid out did not exceed 60 feet in width; that their property abuts upon the easterly side of the highway; that the boundary line between their property and the highway runs parallel to the front of their service station twelve and a fraction feet westerly of the alleged obstructions; and that the pumps, concrete island, canopy and signs stand upon defendants' property, not upon the highway right of way. Defendants further allege that they have occupied and used the land upon which the alleged obstructions stand for more than 30 years, and that they and their predecessors have maintained exclusive possession thereof more than 50 years.

The applicable statutes are as follows:

I.C. § 40–101. "Highways are roads, streets or alleys, and bridges, laid out or erected by the public, or if laid out or erected by others, dedicated or abandoned to the public." R.S. § 850; reen. R.C. & C.L. § 874; C.S. § 1302; I.C.A. § 39–101; repealed by S. L.1950 (1st E.S.), ch. 87, § 24, p. 117.

I.C. § 40–103. "Roads laid out and recorded as highways, by order of the board of commissioners, and all roads used as such for a period of five years, provided the latter shall have been worked and kept up at the expense of the public, or located and recorded by order of the board of commissioners, are highways. * * *" R.S. § 851; am. 1893, p. 12, § 1; reen. 1899, p. 168, § 2; reen. R.C. & C.L. § 875; C.S. § 1304; I.C.A. § 39–103.

I.C. § 40–402. "Highways are hereby defined as roads, streets, alleys and bridges laid out or established for the public or dedicated or abandoned to the public, and shall be deemed to include necessary culverts, sluices, drains, ditches, waterways, embankments, retaining walls, bridges, tunnels, grade separation structures and roadside improvements, appurtenant to such highways." Enacted 1939 S.L., ch. 16, § 2, p. 33; repealed S.L.1951, ch. 93, § 36; reen. S.L.1951, ch. 93, p. 165, § 2, essentially the same as:

I.C. § 40–107. "Highways are hereby defined as roads, streets, alleys and

bridges laid out or established for the public or dedicated or abandoned to the public. Such highways shall include necessary culverts, sluices, drains, ditches, waterways, embankments, retaining walls, bridges, tunnels, grade separation structures, roadside improvements, pedestrian facilities, and any other structures, works or fixtures incidental to the preservation or improvement of such highways." Enacted S. L.1951, ch. 93, p. 165, § 2.

I.C. § 40–2201. "All highways which have been designated by the department of public works as state highways and taken over, improved, constructed, reconstructed, repaired, or maintained by the department of public works, at any place within the state of Idaho with funds derived from any source, including highways designated and taken over, improved, constructed, reconstructed, repaired, or maintained within the limits of incorporated cities and villages are state highways and shall be deemed to include necessary culverts, sluices, drains, ditches, waterways, embankments, retaining walls, bridges, grade separation structures or roadside improvements, appurtenant to such highways." Enacted S.L.1913, ch. 179, § 9, p. 564; reen. C.L. 63:9; C.S. § 1580; I.C.A. § 39–2101; am. 1935 (2nd E.S.) ch. 4, § 1, p. 9; repealed S.L. 1950 (1st E.S.) ch. 87, § 24, p. 117.

Upon trial plaintiff produced evidence of the establishment of the highway as follows:

Order of the board of commissioners of Bear Lake county, April 6, 1875:

"Ordered, that the present traveled road commencing at the North West Corner of Lot 7, Block 4, St. Charles Five Acre Survey, running thence Easterly over the Outlet bridge and across the Highway at the North end of Bear Lake, thence following the Present road Northerly by Merckley's & Grimmett Ranches, crossing Bear River at the old Peg Leg Ford, to and through Preston, Montpelier, Bennington, Georgetown to the northern boundary of the County, be and is *hereby* declared a County Road."

Order of the board of commissioners of Bear Lake county, June 3, 1891:

"Ordered that all County Roads in Bear Lake County shall be six rods wide and that the County Surveyor is ordered to survey and plat them as instructed by Board of Co. Com."

Plaintiff's exhibit "I" is a map of the highway from Preston extending in a north-northwest direction through Montpelier and Bennington to Georgetown. This map indicates the width of the highway as 2½ chains. The map was prepared by county surveyor E. N. Austin from surveys made by him April 30, 1879, and Sep-

tember 15, 1883, and was recorded November 25, 1883.

Exhibit "C", an excerpt from a report of the state highway commission for the period ending December 31, 1914, recites that the commission selected the highway involved as a part of route no. 1 of the state highway system.

Plaintiff's exhibit "G" is a map of the Burdick property showing its location with reference to the highway. This exhibit was prepared by a licensed civil engineer, Howard L. E. Johnson, maintenance engineer for district no. 1 of the state highway system. Johnson testified that he prepared the map from a survey made by him in May, 1960. He procured the description of the Burdick property from the records of Bear Lake county, as it appears in the deed by which Burdick acquired the property in 1935. The starting point in this description is the south quarter corner of Section 9, Township 12 South, Range 44 East of Boise Meridian. Johnson testified that he commenced at the fence line on the highway and measured east along the fence line on the section line between sections 9 and 16; and that he found a stone of the approximate dimensions given in the field notes of the original survey. This stone was marked "¼", also as recited in the original field notes. Pictures of this monument were identified by the witness and admitted in evidence as plaintiff's exhibit "H". These pictures show the stone under an old barb-

wire fence. He continued east along the section line but did not find the corner common to sections 9, 10, 15 and 16; he continued on east on the line between sections 10 and 15 and found the quarter corner common to those two sections, a stone of a type "that weathers quite badly," and which had weathered somewhat. This stone was also marked "¼" as stated in the original field notes, but did not "quite fit the dimensions quoted in the original notes." From this point the witness chained east and did not find the corner common to sections 10, 11, 14 and 15. He continued on east and found the quarter corner common to sections 11 and 14. This was a stone, also marked "¼", as described in the original field notes. After checking the location of the south quarter corner of section 9 against the other quarter corners found, and finding the distances between the three quarter corners to correspond with those given in the notes of the original survey, the witness surveyed the Burdick property, using the courses and distances given in the description in the Burdick deed, and starting with the south quarter corner of section 9, as found by him. This survey and the map prepared therefrom show the frontage line of the Burdick property to be approximately 21 feet east of the east line of the highway. This 21-foot strip is not claimed by the plaintiff and upon it rests a portion of the buildings owned by the defendants. The east line of the high-

way, shown by Exhibit "G" and as claimed by plaintiff, runs immediately back of the concrete island and pumps in front of defendants' service station, and parallel to and about a foot or a foot and a half westerly from an old fence running along the east side of the highway.

One, Ralph H. Benson, a licensed land surveyor, testified in behalf of the defendants. This witness made two surveys of the Burdick property, also using the description taken from the deed to Burdicks of 1935. He testified he was unable to locate the south quarter corner of section 9; that he found the quarter corner between sections 10 and 15; the quarter corner between sections 11 and 14; the corner common to sections 11, 12, 13 and 14; the corner common to sections 2, 3, 10 and 11; the corner common to sections 21, 22, 27 and 28; the corner common to sections 20, 21, 28 and 29; and that he checked his survey against information contained in a railroad map, and in a highway plat of 1924. From the corners found by him he relocated the south quarter corner of section 9, and from that corner as thus relocated he surveyed the Burdick property and from that survey prepared maps in evidence as exhibits "2" and "3".

The testimony of this witness and the maps prepared by him locate the east boundary line of the highway and the west property line of defendants' property in front of the service station, 12.2 to 12.4 feet westerly from the concrete island upon which the pumps are located, and about 16.7 feet westerly from the boundary line of the highway as fixed by the plaintiff. Among other documentary evidence submitted by defendants is a photostatic copy of the original warranty deed by which they acquired the property in 1935. The starting point of metes and bounds description contained in this deed is the south quarter corner of section 9.

Exhibit "4" is a photostatic copy of the original government map of Township 12 South, Range 44 East of the Boise Meridian.

Exhibit "5" is a photostatic copy of the original field notes from which exhibit "4" was drawn. The original survey was made in November and December, 1875, and the map, exhibit "4", was approved and file February 12, 1876.

Exhibit "6" contains a photostatic copy of the homestead entry, final certificate and patent to the 120 acres of land which includes the land later deeded to defendants. The homestead entry is dated March 30, 1886; the final certificate February 23, 1893; and the patent is dated June 19, 1893.

Defendants' exhibit "8" consists of historical notes of the location and settlement of the village of Bennington, taken from the records of the L. D. S. church in Salt Lake City.

Defendants contend that their title dates back to the homestead entry in 1886, and that the plaintiff's evidence does not establish any alienation, easement, dedication or other burden thereon in favor of the plaintiff subsequent to that time; and that the extent of the highway easement in front of their property as to width is limited to that portion actually used for highway purposes through the years since the highway was first opened. This contention they urge is not affected by the order of the county commissioners of April 6, 1875, because that order does not specify the width of the highway. The order of the commissioners of June 3, 1891, making all county roads six rods wide, defendants contend, was not effective because it was made after their predecessor acquired title, and the county could not by such an order acquire any part of their frontage for highway purposes. Defendants further contend that the map of the road, plaintiff's exhibit "I", made and recorded in 1883, fixing the width of the road at 2½ chains, or 165 feet, is ineffective because a comparison of its courses and distances with those appearing on the plaintiff's highway maps, exhibit "E", shows that the survey made in 1883 locates the village of Bennington about a half mile south, and a little to the west, of the present village of Bennington, and in section 16; whereas, the present village and defendants' property are in the SW¼ of section 9. To support their con-

tention that the original map of 1883 does not describe the present highway and that the order of the county commissioners of April 6, 1875, does not refer to the present highway, defendants refer to the history of the village as contained in exhibit "8". This exhibit recites:

"Bennington was first settled in the spring of 1864 by Jared Bullock and Jonathon Hoops of Provo. They located on the South side of Bennington creek, about 1 mile south of the present townsite. They built their two cabins on the SW quarter of Section 16. * * * In the spring of 1870 a townsite was surveyed by Alonzo Bingham and a few of the brethern built houses at once, but the location soon proved unsatisfactory.

"A new township was surveyed at Bennington 26 June 1879 by surveyor, Edwin Nelsen Austin, mainly in the SW qtr of Section 9. Soon afterwards people commenced to build a new townsite which is still the location of the town of Bennington. * * *

"In 1885 a new meeting house, a log building 42 x 26 feet was built on the second townsite."

The recitals in this exhibit indicate that if the original road went through the original Bennington townsite, both the townsite and the road were moved to the present location prior to the homestead entry

of defendants' predecessor, and sometime between 1870, when the original townsite was surveyed in section 16, and 1879, when the second townsite was surveyed in section 9. Exhibit "4", the official map prepared from the government survey made in November, 1875, locates the village of Bennington in the SW¼ of section 16, but the highway as shown on that map does not go to or through the original village as thus located, but follows a course to the east of the original village and a little to the west of the present village. Although the map of the road prepared and filed by the county surveyor in 1883 may be inaccurate in its location of the village of Bennington, it is competent evidence of two facts: first, that the road as then surveyed and recorded ran through the village of Bennington, and, second, the road was 2½ chains in width. There are no township, section, or government subdivision lines on exhibit "I" and, therefore, it does not purport to locate the village of Bennington with reference to any section or subdivision. There is no evidence that any other road or highway was ever used or established from Montpelier, through Bennington, to Georgetown. The map and the order of the county commissioners of April 6, 1875, are competent evidence of the establishment of this highway across the public domain with a width of 165 feet, by grant from the federal government. U.S. C.A., Title 43, ch. 22, § 932. Defendants'

predecessor took title subject to the grant, and to the highway right of way as it had been laid out and recorded prior to his homestead entry.

■■ The county commissioners' order of June 3, 1891, fixing the width of all county roads at 6 rods did not have the effect of appropriating any part of the homestead entry. On the contrary, it was an abandonment of excess width and reduced the width of the highway from 165 feet to 99 feet. The evidence also shows that the old fence lines along the highway in the general area are 99 to 100 feet apart. Defendants' exhibit "15", plaintiff's exhibits "G" and "A", attached to the complaint, show the existence of an old fence parallel to and from one to two feet east of the east highway line as established by plaintiff. Such is competent evidence on the issue of the established width of the highway. Meservey v. Gulliford, 14 Idaho 133, at page 147, 93 P. 780, at page 784.

In Hostetter v. Commonwealth, 367 Pa. 603, 80 A.2d 719, the Pennsylvania court held that evidence that monuments along the right of way were separated in width a distance of 47 to 54 feet was relevant and material to the issue as to whether the road had been widened from the original 33 feet to 50 feet as later authorized.

In Sweet v. Irrigation Canal Co., 198 Or. 166, 254 P.2d 700, 256 P.2d 252, a case in-

volving the establishment of a highway by user, the Oregon court held that the recognition of limits of the right of way by abutting owners, as indicated by monuments and fences erected by them, was an important element in determining width; also, that the usual width of highways in the locality is a pertinent factor.

■ It was the prerogative of the trial court to determine, from the testimony of the two witnesses given before him, and the exhibits prepared by them, which of the surveys was the more accurate and reliable; that made by Johnson or that made by Benson. If the court believed the testimony of Johnson, that he found the south quarter corner of section 9, then the Johnson survey, so far as it was otherwise accurate, must be accepted as against the survey made by Benson from a relocated south quarter corner. The original monument, if in place, controls the location of the corner as against a point established by relocation, no matter how painstakingly or carefully done. Richardson v. Bohney, 19 Idaho 369, 114 P. 42; Cramer v. Driesbach, 77 Idaho 75, 287 P.2d 981.

In attempting to explain the discrepancy between the two surveys, Benson testified:

"There is an explanation for it, due to the fact that the old surveyors used a chain and the compass, and due to the slope of the ground and not accurate enough chaining there was the possibility of a discrepance in chaining. I don't know."

and on cross-examination:

"Q. Yes. In fact, isn't the discrepancy the fact that Mr. Johnson found the true monument and you reestablished a lost monument? Isn't that the reason for the discrepancy? A. Yes, sir."

■ The corner as established by the original survey is controlling regardless of any inaccuracy in the making of that survey. Bayhouse v. Urquides, 17 Idaho 286, 105 P. 1066; Johnson v. Dunn, 46 Idaho 25, 266 P. 1099.

■ There is substantial and competent evidence supporting the court's finding and conclusion that the highway was dedicated to the public use as early as 1879, and that its width and boundary lines were properly established and are as shown by plaintiff's surveys. The highway and its width being thus established, the state was entitled to improve and expand the use of the highway to its entire width to meet increasing traffic demands.

■■ Although this is not a highway established by user, defendants nevertheless contend that since they and their predecessors have occupied and used the land upon which the obstructions stand and the ap–

proaches thereto without interruption for 30 years, they have established a right or title thereto; and that since the area in dispute has not been used for highway purposes or kept up and maintained at public expense, it cannot now be successfully claimed by the state. Mere non-user of a portion of the total width of a highway over a period of years does not constitute an abandonment, or estop the public from claiming the title or right to the use thereof. Boise City v. Hon, 14 Idaho 272, 94 P. 167; Thiessen v. City of Lewiston, 26 Idaho 505, 144 P. 548; Sweet v. Irrigation Canal Co., 198 Or. 166, 254 P.2d 700, 256 P.2d 252; Pine v. Reynolds, 187 Iowa 379, 174 N.W. 257, 6 A.L.R. 1206, annotation 1210; Pillsbury v. Brown, 82 Me. 450, 19 A. 858, 9 L.R.A. 94.

 Possession and use of an unused portion of a highway by an abutting owner is not adverse to the public and cannot ripen into a right or title by lapse of time no matter how long continued. Boise City v. Hon, supra; Hanson v. Proffer, 23 Idaho 705, 132 P. 573; Thiessen v. City of Lewiston, supra; Keyser v. City of Boise, 30 Idaho 440, 165 P. 1121, L.R.A.1917F, 1004; Yellow Cab Taxi Service v. City of Twin Falls, 68 Idaho 145, 190 P.2d 681; Boise City v. Sinsel. 72 Idaho 329, 241 P.2d 173; Sweet v. Irrigation Canal Co., supra; Pine

v. Reynolds, supra; Kamerer v. Commonwealth, 364 Pa. 120, 70 A.2d 305; Hostetter v. Commonwealth, 367 Pa. 603, 80 A.2d 719. Nor does such possession and use, even though by express permission of the public authority, work an estoppel against the public use. Yellow Cab Taxi Service v. City of Twin Falls, supra; Boise City v. Sinsel, supra; State on relation of Rich v. Idaho Power Co., 81 Idaho 487, 346 P.2d 596. Even in the case of a highway established by user, all portions of the highway right of way need not be maintained and kept up at public expense. Kosanke v. Kopp, 74 Idaho 302, 261 P.2d 815. In Boise City v. Sinsel, supra, we held that an abutting owner who erected and maintained a building on a portion of a public street under a permit granted by the city council, for a period of 25 years, did not acquire a right to such occupancy, and that the city was not estopped to cancel the permit and require the removal of the building.

The judgment requiring the defendants to remove the gasoline pumps, the concrete island, canopy and signs, and any other encroachment upon the highway is affirmed.

Costs to respondent.

SMITH, KNUDSON, McQUADE and McFADDEN, JJ., concur.