439 P.2d 928

F. R. MANN, Plaintiff-Appellant,

v.

CITY OF JEROME, a Municipal Corporation,
Defendant-Respondent.

No. 10031.

Supreme Court of Idaho.

April 22, 1968.

Laurence B. Quinn (since deceased), and Edward Babcock, and Balleisen & Galley, Twin Falls, for appellant.

Richard H. Seeley and F. M. Rettig, Jerome, for respondent.

TAYLOR, Justice.

Plaintiff (appellant), a real estate developer, owned a tract of land adjoining the defendant (respondent) City of Jerome. A part of this land, which was annexed to the city, was platted by plaintiff in 1955 as F. R. Mann Subdivision No. 2, for the purpose of converting the property to residential use and the selling of individual lots therein. The price of the individual lots was fixed by plaintiff and—among other things—was based upon the cost of installing water lines, and the price the real estate market would support.

During approximately two years after platting no lots were sold and plaintiff, being in doubt as to whether he would receive a fair return on his investment, decided to vacate the plat. In February, 1957, in a conversation with the mayor of the

city, plaintiff was advised by the mayor that he might be able to recoup part of the cost of the proposed water lines in the subdivision through the application of a recently passed ordinance. The ordinance referred to, ordinance 309, contained rule 17 as follows:

"Extension, as contemplated in these rules, is as follows:

"(a) A branch from or continuation of an existing main or service pipe, or both, to serve new business;

"(b) The changing of any main or service now installed to meet the consumer's requirements;

"(c) Any increase of capacity of any existing extension. It may consist of mains, service pipes, meters, connections and other materials; provided, however, extensions within the meaning of this rule shall not include connection lines, pipes, taps and service lines on private property, which are required to be installed and maintained at the consumer's expense pursuant to rule 7 and all rules supplemental thereto.

"Whenever an applicant for service is not on an existing main, or a consumer's operations are not located upon a completed main of such capacity as to enable the city to furnish the service desired by the consumer, extensions from the nearest available main to the applicant's or consumer's place of operation will be made upon the following conditions:

"That the city shall not construct nor pay for the construction of water distribution lines or laterals or other extensions which are not shown and described in the maps, plans, and specifications concerning the system now on file in the office of the city clerk. Any such lines or laterals or other extensions when needed shall be constructed by the applicants for water service through or from the system, and at their expense, including but not limited to a reasonable charge by the city for city engineering, supervision and inspection, in accordance with specifications prescribed by the city engineer.

Any such lines or laterals or other extensions upon their connection to the system shall become a part of the municipal water system owned, operated and maintained by the city. In case such lines or laterals or other extensions are so constructed or otherwise acquired, the applicants defraying the cost thereof shall be entitled in not to exceed that amount (without accruing interest thereon) to the repayment to them by the city of the tap or connection fees paid by the applicants, if any, to the city and of fifty per centum of the periodic service or use charges or rates paid thereby to the city for a period of time not to exceed ten years from the date of the city's approval of the plans, specifications and contract documents therefor, such period to be designated by the city prior to its approval of such construction or other acquisitions of such lines or laterals or other extensions."

Plaintiff thereafter studied the ordinance himself and decided to continue with the project. He purchased materials for and constructed the water system in consultation with the city water superintendent. During the course of the construction the system was inspected by city personnel and the materials used were approved by the city engineer and water superintendent. The city council did not authorize the approval of materials, nor the inspection of the system, nor did it authorize or confirm the advice given plaintiff by the mayor. By action of the council the city accepted and assumed control and maintenance of the system December 1, 1959.

A number of lots were sold by plaintiff subsequent to installation of the water system. These lots were conveyed by warranty deeds which made no reference to ownership of the water lines or to rebates under rule 17. On some of the lots residences were built by the purchasers and on others residences had been built by plaintiff prior to sale. These lot owners are the users of water from the system and pay to the city the charges made for the water service. None of such owners has made ap-

plication to the city for rebate of water service charges. Lots remaining in plaintiff's ownership are not served with city water nor is plaintiff charged therefor.

In 1961, plaintiff filed a claim with the city for repayment of his costs of installing the water system by means of payment to him of 50% of the service charges paid by users of the water from the system in the subdivision, pursuant to rule 17 of ordinance 309. The city council denied the claim and plaintiff brought this action to recover thereon.

This appeal is from the judgment of the district court dismissing the action.

The trial court concluded that plaintiff was not entitled to any payment or rebate from the city of any part of water payments made to the city for water service by water users in plaintiff's subdivision. With this we agree.

The trial court also concluded that plaintiff had not met the requirements of rule 17 of ordinance 309, in that he had not made application in advance of construction, nor had any understanding with the city as to plans, extent or nature of the extension, or of the time or period for payment of rebates. It may be arguable whether under rule 17 the approval of the city was required prior to "construction" or prior to "acquisition" by the city. However, in either event, plaintiff cannot recover. Rule 17 makes it clear that the only person entitled to a rebate or repayment is the person "defraying the cost" of the lines or extensions. On cross-examination, plaintiff admitted that he had included the pro rata cost of the water system in the price of the lots and residences sold by him.

"Q The price that you fixed for the sales on these various lots and tracts included your original cost, I presume; I mean you determined and you considered your original cost in determining that price?

"A Yes.

"Q And you also included the improvements, which included not only the water system but the landscaping, streets, sidewalks, gutters, and sewer system?

"A Yes."

Thus, it is the lot owners and users of the water service who have defrayed their proportionate share of the cost of the water system. As to lots still in plaintiff's ownership, it is admitted that no rebate is possible, since these lots do not receive water and are not charged therefor.

It is not clear from the findings and conclusions of the trial court whether its judgment dismissing the action was based solely upon plaintiff's failure to make application to the city for approval of his plans prior to construction, or whether it was also based upon plaintiff's failure to qualify as the one defraying the cost of the installation. But, whether based upon one or both of these defenses, the decision is correct and will be affirmed. Layrite Products Co. v. Lux, 91 Idaho 110, 416 P.2d 501 (1966), and cases there cited.

Plaintiff also urges that the city is estopped from denying his claim for rebates by reason of the action of the mayor in advising plaintiff that he might claim such; the action of other city officials in consulting with and approving plaintiff's materials and installation; by the action of the council in accepting the system; and also by the fact that certain individual users—not in plaintiff's subdivision—had been allowed rebates without prior application and approval of their respective extensions. Plaintiff cites Lloyd Crystal Post No. 20, American Legion v. Jefferson County, 72 Idaho 158, 237 P.2d 348 (1951); Murtaugh Highway District v. Twin Falls Highway District, 65 Idaho 260, 142 P.2d 579 (1943); Robinson v. Lemp, 29 Idaho 661, 161 P. 1024 (1916); Twin Falls County v. West, 25 Idaho 271, 137 P. 171 (1913). See Boise City v. Wilkinson, 16 Idaho 150, 102 P. 148 (1909).

"In this jurisdiction we have recognized that equitable estoppel will lie against a municipality but that it must be invoked with caution and only in exceptional cases and that its application is the

exception and not the rule." Boise City v. Sinsel, 72 Idaho 329, at 338, 241 P.2d 173, at 179 (1952).

Plaintiff admitted he studied the ordinance himself before he constructed the system, and that he passed on to his vendees the prorated cost thereof. The facts do not justify an estoppel against the city. Boise City v. Sinsel, supra; see also, Martin v. Alcoholic Beverage Control Appeals Board of State of California, 52 Cal.2d 287, 341 P.2d 296 (1959); 28 Am.Jur.2d, Estoppel, §§ 128–130; 31 C.J.S. Estoppel §§ 141–144.

Judgment affirmed.

Costs to respondent.

SMITH, C. J., and McQUADE, McFADDEN and SPEAR, JJ., concur.